## JOHN PATRICK MAHONEY *v.* STATE OF MARYLAND

[No. 30, September Term, 1971.]

*Decided October 1, 1971.*

The cause was argued before THOMPSON, MOYLAN and GILBERT, JJ.

*John T. Bell* and *M. Albert Figinski,* with whom were *Charles W. Bell, Frank S. Cornelius* and *Bell & Bell* on the brief, for appellant.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *William M. Cave, Deputy State's Attorney for Montgomery County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

John Patrick Mahoney was convicted of assault with intent to murder by a jury in the Circuit Court for Montgomery County. He was sentenced to a term of ten years, the last five years of which were suspended conditionally.

Ronald Lee Dorsey testified that on the evening of October 16, 1969, as he was leaving his residence, he noticed a van type truck which aroused his suspicions. He returned to the area of his home about 10 to 15 minutes later and again observed the parked vehicle. He wrote down the license number and asked the driver [later identified as appellant] what was going on. Two persons jumped from the van and ran. Dorsey then drove to a neighbor's house, which was a short distance up the street, in order to call the police. While he was

talking to Mr. and Mrs. Handback, the neighbors, the same van came by and shots were fired in the direction of Dorsey. Two bullets hit the tailgate of Dorsey's pickup beside which he was standing. Dorsey jumped into the pickup and fled. Mr. and Mrs. Handback ran into their house. Dorsey was positive that the person he saw driving the van, when he first inquired as to what was going on, was the appellant. Dorsey said that the appellant stuck his head out of the door of the truck and that his [Dorsey's] headlights were shining on the appellant. Dorsey testified that the shots were coming from the driver's side of the van, but Mrs. Handback thought that the shots came from the passenger side of the vehicle.

The van was registered to the appellant and another. Appellant denied involvement and claimed that the van had been stolen. It was reported stolen to the police on the morning of October 17, 1969, at 9:05 a.m. Apparently it was recovered shortly thereafter. Appellant asserted that the vehicle was stolen some time between 6:30 p.m. on the 16th, and 8:30 a.m. on the 17th of October. He further said that it had been hot-wired.

Appellant produced a number of witnesses who testified that appellant, in company with the other owner of the van, was in Odenton, Maryland, at the time of the shooting and was there until the bars closed at 2:00 a.m.

Detective Marvin Gulick of the Montgomery County Police Department, investigated the incident, and at his request appellant went to police headquarters. At that time the appellant had on his person a Virginia fishing license, which stated a false residence.

Approximately 45 days after the trial, the trial judge had the appellant, his attorney, a representative of the State's Attorney's Office, and a court reporter brought into his chambers, where he conducted a broad examination into the appellant's personal and marital situation, the number of children, job, salary and prior convictions, as well as a charge upon which he had not been convicted. The court then inquired as to whether an appeal had

been filed or whether one was contemplated. The latter question was answered in the affirmative.

On appeal, the appellant raises three questions.

1. The admissibility of certain evidence.
2. The sufficiency of the evidence.
3. The sentencing procedure.

## I

### ADMISSIBILITY OF CERTAIN EVIDENCE

The first witness produced by the defense was Detective Gulick, who was asked, relative to the conversation he had with appellant in the police station, "What did you say to him, and what did he say to you?" The sergeant gave a lengthy answer, during the course of which he said, "I then questioned him about a fishing license." Counsel interrupted with another question, and the examination of the sergeant continued.

On cross-examination, the Deputy State's Attorney asked the question, "Where was that fishing license from?" Appellant objected on the ground that the question was beyond the scope of the examination, and irrelevant. The trial judge overruled the objection, and the witness was allowed to answer. The witness then answered the question, stating that the license showed a home address of "I believe some place in the Fort Belvoir, Virginia area, a resident fishing license." When asked, "What state, of the State of Maryland?" the witness answered, "Virginia." He then continued with a discourse during which he related to the jury how the appellant had lied about his address in order to obtain a cheaper rate, and that non-residency fees were higher than residency fees. No objection was made by the appellant to the non-responsive dialogue, nor was there a motion made to strike the answer.

Here, appellant contends that the testimony should not have been allowed. We think otherwise. In the appellant's initial examination of Detective Gulick, he had asked what was said by the appellant to the detective,

and, among other things, in the response was the matter of the fishing license. We cannot find the answer to the State's question, "Where was that fishing license from?" to be harmful to the appellant because the question asked only the name of the state and not if the license was a resident or non-resident one. It was the voluntary non-responsive dialogue to which no objection and no motion to strike were made that brought in the matter of the resident license being obtained by the supplying of a fictitious address. The question is not properly before us inasmuch as the appellant did not preserve it by appropriate action. Rule 1085.

Appellant next argues under the admissibility of evidence that the State was allowed to recall, over objection, the last defense witness, Charles E. Nolker, who had been subjected to cross-examination. The appellant relies upon the case of *Deibert v. State*, 150 Md. 687, 693 (1926). We think appellant misinterprets *Deibert*. The Court of Appeals in that case upheld the right of a trial judge to refuse to allow the defense to recall a State's witness, saying that the same was in the discretion of the trial court. It did not say it was impermissible to recall a witness.

When the witness, Nolker, was recalled, he testified that one of the defense witnesses, a Mrs. Lewis, had been taken to her home at approximately 2:00 a.m. on October 17, contrary to the appellant's testimony that she had been left standing in front of the bar. Neither the appellant nor the State asked Mrs. Lewis that specific question.

We have held that the action of the trial court in permitting the recall of a witness to the stand is entirely within its sound discretion, and that this Court would not interfere with that discretion unless there is a clear abuse which results in prejudice to the accused. *Turner v. State*, 7 Md. App. 74, 78 (1969), *Gardner v. State*, 8 Md. App. 694, 699 (1970), *Winegan v. State*, 10 Md. App. 196, 203 (1970). While we think that the question could have been properly elicited in cross-examination of the witness, Nolker, we find no abuse of discretion on the

part of the trial judge in allowing the recall of the witness by the State as part of its rebuttal.

## II

### SUFFICIENCY OF THE EVIDENCE

Appellant argues that the evidence did not prove him guilty of the charge of assault with intent to murder. He urges us to overrule our holding in *Wells v. State*, 8 Md. App. 510, 521 (1970), that a specific intent to kill is not a necessary element for conviction of assault with intent to murder. We decline to do so. Evidence showing that a deadly weapon such as a gun was pointed toward a human being and discharged in the general direction of that human being in a random fashion is sufficient to support inferences of both malice and intent to do grievous bodily harm. In Clark and Marshall, *Crimes*, 7th Ed., § 5.03, it is stated:

> "If a person deliberately, and without ignorance
> of fact, shoots in the direction of another, it will
> be presumed that he intended to kill him, and he
> may be convicted of murder, or assault with in-
> tent to murder, according to the result."

The intentional use of a deadly weapon in a deadly manner may give rise to inferences of intent to kill and premeditation. 1 Wharton, *Criminal Evidence*, 12th Ed., § 131.

We are not persuaded by appellant that *Williams v. State*, 9 Md. App. 447 (1970), wherein we reversed a judgment of assault with intent to murder, requires us to act similarly here. In *Williams*, the prosecuting witness had entered his automobile when he was shot and did not see who shot him, nor did he know why Williams would have shot him. The prosecuting witness was, however, shot from the window of a house, and all he saw was a flash. He had been in the house prior to the time he was shot, and two other people, Williams and Barbara, were also there. Williams testified that Barbara had done the shooting; he had actually seen her with a gun in her

hand, and that Barbara had told him she did the shooting. We reversed because the evidence did not show beyond a reasonable doubt that Williams was the criminal agent, nor was there any evidence adduced to show that the appellant Williams was in the room from which the shot was fired. The prosecuting witness had testified that Williams was not in that room when the witness was in the house visiting Barbara. Here, appellant was placed in the van by Dorsey who actually spoke to him and specifically identified him. Shots were fired from the vehicle in the general direction of Dorsey and struck the pickup truck beside which he was standing. Dorsey testified that the shots came from the driver's side of the van, a position in which he had earlier placed appellant. The presence of other persons was not established. The crime of assault with intent to murder embodies the element of malice leading to a charge of murder if death should ensue. *Marks v. State,* 230 Md. 108, 112 (1962). The test for assault with intent to murder is that the crime would be either murder in the first or second degree if the victim dies. The Court of Appeals said in *Tate v. State,* 236 Md. 312, 317 (1964) :

> "The essential distinction between murder and manslaughter is the presence or absence of malice, which is the intentional doing of a wrongful act to another without legal excuse or justification. The inference of malice may be drawn from the fact of the use of a deadly weapon directed at a vital part of the body. *Chisley v. State,* 202 Md. 87, 95 A. 2d 577. The law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. This presumption also applies to cases of assault with intent to commit murder." See also *Cook v. State,* 9 Md. App. 214, 218 (1970), *Lindsay v. State,* 8 Md. App. 100, 104 (1969), *Perez v. State,* 7 Md. App. 452, 454 (1969).

We think there was legally sufficient evidence from which the jury could properly conclude that the crime of assault with intent to commit murder had been committed, and that the appellant had committed it.

## III

### SENTENCING PROCEDURE

At the sentencing proceedings the trial judge, as we have noted herein, conducted a wide-range inquiry into the appellant's life. The judge stated that he was certain of the appellant's guilt and then asked, "Has any appeal been filed in this case?" Counsel stated, "You can't file an appeal——."[1] Whereupon the court asked, "Do you contemplate filing an appeal?—Do you wish to?" The answer was, "Yes." Counsel then informed the court, "Your Honor, we haven't discussed this and any appeal would be noted after sentencing." The court then continued its inquiry into the appellant's habits and then dispatched the parties to the courtroom, where, after argument of counsel, sentence was pronounced.

Appellant argues that while the trial judge may, within his broad discretion, consider information concerning a defendant's reputation, prior record, general health, morals, mentality and social background in determining the type of sentence which should be imposed [see *Driver v. State,* 201 Md. 25, 31-32 (1952), *Skinker v. State,* 239 Md. 234, 237 (1965), *Gee v. State,* 2 Md. App. 61, 68 (1967), *Smith v. State,* 5 Md. App. 633, 638 (1969)] he should not be allowed to inquire as to whether or not a defendant intends or contemplates the filing of an appeal.

We have held that the matter of sentencing within the limits of the law is peculiar to the trial judge and will not be reviewed by this Court unless dictated by passion, prejudice, ill-will, or other unworthy motive. See *Johnson v. State,* 9 Md. App. 37, 39 (1970), *Minor v. State,* 6 Md. App. 82 (1969), *Gee v. State, supra.*

---

1. We assume that counsel was about to correctly state the law that no appeal lies until there is a final judgment.

We think the sentencing procedure utilized in this case does not fall within the exceptions stated herein. It is improper for a trial judge to inquire prior to imposition of sentence as to whether or not a defendant contemplates filing an appeal, because such an inquiry gives rise to an inference that the severity of the sentence is to be measured by the response of the defendant. Such a query is not relevant to the sentencing. In *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), the Supreme Court said:

> "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial."

It logically follows that if the courts are prohibited from exercising vindictiveness on a retrial because of a defendant's successful appellate attack, they are likewise prohibited from exercising vindictiveness because of a defendant's intention to appeal. However, the sentence imposed in this case was well within the limits of the statute, and we cannot say, on the bare record before us, that it was motivated by passion, ill-will, prejudice, or some other unworthy motive. Nor can we say that it was "vindictive" as a result of the appellant's response to the trial judge's inquiry relative to an appeal. The better practice is that the judge, before imposing sentence, not inquire as to a defendant's intentions regarding an appeal. A defendant in a criminal case has conferred upon him by Article 5, §§ 12 and 12 (a) of the Maryland Code, the right to appeal any conviction.

*Judgment affirmed.*
*Costs to be paid by the appellant.*