Jimmy GIFFORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–81–056–CR.

Court of Appeals of Texas, Austin.

Feb. 17, 1982.

R. Norvell Graham, Jr., Evans & Marshall, San Antonio, for appellant.

William L. Schroeder, Crim. Dist. Atty., New Bruanfels, for appellee.

PHILLIPS, Chief Justice.

In a trial before a jury after a plea of not guilty, appellant was convicted of burglary of a habitation. Tex.Pen.Code Ann. § 30.-02(a)(1) (1974). Punishment was assessed by the court at fifty years in prison. Appellant duly perfected his appeal and filed his brief in the trial court on May 22, 1981. In the more than eight months since that filing, the State has not filed a brief and has not participated in the defense of this appeal in any way. This Court has been forced to determine the State's position solely from the trial record.

We must reverse the judgment in this cause because the trial court erred in suggesting to appellant he would receive a lesser sentence if he waived his right of appeal. After the jury returned its guilty verdict, the court addressed appellant and appellant's counsel,

> THE COURT: May I see you just a moment? I don't know—I haven't precluded considering punishment in this case today, if you want to. I'm not asking you to. You talk to Mr. Gifford. If he wants to waive an appeal, if he wants to waive the time for punishment, waive Notice of Appeal, I would go ahead and assess a proper punishment. And I will give that some consideration. Then we won't have the punishment hearing on the 30th. I don't know what your pleasure is in that regard. What I'm trying to tell you, I'm not out here trying to hang one on Mr. Gifford. But by the same token, I don't want to give him some consideration in that regard and then have him come back several weeks later and file Notice of Appeal and a Motion for New Trial. We're just not going to do that.

> \* \* \* \* \* \*

> THE COURT: Well, it may be, but I want—before I give any consideration to a lesser number of years, I want that waiver. And if he doesn't want to do it, that's fine. I mean I'm not trying to talk him into it. But I don't want a misunderstanding about it either. If he wants to waive the appeal, then I will take that into consideration in setting the punishment. If he doesn't

want to waive the appeal, I'll go ahead and set proper punishment.

Appellant chose not to waive his right to appeal and was sentenced to fifty years.

Though a trial judge has broad discretion in sentencing, *Morano v. State,* 572 S.W.2d 550 (Tex.Cr.App.1978); *Sonderup v. State,* 418 S.W.2d 807 (Tex.Cr.App.1967), we hold that to increase the prison term where a desire to appeal is demonstrated constitutes error. In considering when harsher sentences are permissible in retrials after appeals, the United States Supreme Court held due process prohibits vindictiveness against the defendant for having successfully attacked his first conviction. The Court continued:

> A court is without right to put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. It is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.

*North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). *See also, Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

■ Accordingly, we believe that if courts are prohibited from exercising vindictiveness on a retrial because of an accused's successful appellate attack, they are likewise prohibited from exercising vindictiveness because of a convicted felon's intention to appeal. *See Cleaveland v. State,* 507 S.W.2d 769 (Tex.Cr.App.1974); *Colburn v. State,* 501 S.W.2d 680 (Tex.Cr.App.1973).

■ We are also of the view that once a trial court has knowledge of a convicted felon's intention to appeal, it is almost impossible for a reviewing court to determine whether the assessment of punishment was due to vindictiveness. Therefore, in our opinion the best resolution is the approach adopted by the Maryland courts which prevents the trial court from even inquiring as to whether a convicted felon intends to appeal. *See Mahoney v. State,* 13 Md.App. 105, 281 A.2d 421 (Md.Ct.Spec.App.1971).

Of course, we note that the issue is not before us as to whether a trial court may properly consider a convicted felon's unsolicited waiver of appeal in assessing punishment if the waiver is knowingly, voluntarily, and intelligently made. Consequently, we express no opinion as to that factual situation.

The sentencing procedure requires a remand for reassessment of punishment only. But, appellant also offers valid grounds of error concerning admissibility of evidence at trial. Necessary to a proper disposition of those grounds of error is a brief review of the factual setting of this case.

On March 17, 1980, the Lewter home in Comal County was burglarized. Jewelry and silver valued at about $12,000 was taken. A complete inventory, including sketches of the stolen jewelry, was given to New Braunfels Police Detective Jim Buntyn. A neighbor saw two pickup trucks near the house and managed to record the license number of one, MU–6866. The New Braunfels police teletyped the truck descriptions and license number to other area law enforcement agencies. Two days later, appellant was stopped in Pleasanton. During a valid inventory search of the pickup driven by appellant, a credit card, charge slips and a photograph were seized. The same license number, MU–6866, seen at the New Braunfels burglary scene was written on one of the slips. This physical evidence was turned over to Detective Buntyn.

Apparently based on this evidence alone, a search warrant was issued for appellant's trailer home in Wimberly. At least one item from the Lewter home, a cameo, was found during the search. Appellant was arrested in connection with this search on March 30, 1980. The next day, after appellant had been duly warned of his rights by a magistrate, he was questioned by Detective Buntyn. Detective Buntyn also read appellant his rights. During the questioning, appellant was shown the photograph seized during the Pleasanton inventory search. He identified the photograph as Jefferson Andrew Lykins.

At trial, the State did not oppose appellant's motion to suppress physical evidence and statements stemming from the March 30 search and arrest. The record does not reveal on what basis this decision was made and neither the warrant nor its supporting affidavit is in the record before this Court.

Aided by appellant's custodial identification of the Lykins photograph, Detective Buntyn located Lykins in Corpus Christi. Lykins gave Buntyn a complete confession implicating appellant as the prime perpetrator. Lykins also led Buntyn to a Corpus Christi pawn shop from which the bulk of the Lewter property was recovered. Finally, Lykins gave Buntyn the pawn shop tickets describing in detail the Lewter property.

Upon returning from Corpus Christi, Detective Buntyn questioned the still incarcerated appellant on at least two more occasions. During these interrogation sessions, appellant orally admitted being inside the Lewter home and described the burglary in detail. Those oral admissions were received in evidence at appellant's trial.

▮▮ The trial court erred in admitting into evidence the oral statements in which appellant admitted being inside the Lewter home and described the burglary. As a general rule, oral confessions are not admissible, *Jimmerson v. State*, 561 S.W.2d 5 (Tex.Cr.App.1978). If the State had filed a brief with us, we assume it would rely on Tex.Code Crim.Pro.Ann. art. 38.22, Sec. 3(a)(c) (1979). Section 3(a)(c) allows the admissibility of an oral statement "which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property ..." In other words, oral statements which contain information that leads to evidence of guilt are admissible in their entirety. *Marini v. State*, 593 S.W.2d 709, 713 (Tex.Cr.App.1980). We assume from its trial strategy the State would argue appellant's admission that a certain pair of cuff links was taken in the burglary serves to make admissible his oral statement that he was inside the home and his oral description of the burglary.

▮ Outside the hearing of the jury, in a hearing to determine the statements' admissibility, Detective Buntyn testified he was given sketches of the cuff links by Mrs. Lewter and he had the sketches with him when he went to Corpus Christi to speak with Lykins. Lykins gave him the pawn slip listing the cuff links. Buntyn's offense report indicates when he saw the cuff links in the pawn shop, he immediately decided Mrs. Lewter would have to identify them. Detective Buntyn possessed all this information concerning the cuff links before appellant even mentioned them. During the hearing, Buntyn testified that appellant made the reference to the cuff links, admitted being inside the house and described the burglary during an interview on April 4. Detective Buntyn took Mrs. Lewter to Corpus on April 7 and at that time she positively identified the cuff links as belonging to her family. Appellant's admission that the cuff links were taken in the burglary led Buntyn to nothing new; Buntyn already knew that cuff links were taken in the burglary and he had already located them. The cuff link reference did not lead Buntyn to stolen property and hence cannot serve to make admissible the balance of the oral statement. *Scott v. State*, 564 S.W.2d 759 (Tex.Cr.App.1978); *Smith v. State*, 514 S.W.2d 749 (Tex.Cr.App.1974). The oral statement should have been suppressed.

Our decision is bolstered by the fact that when Buntyn later testified before the jury, he stated that appellant admitted being inside the Lewter home and described the burglary during a separate, later interview. In the version heard by the jury, Buntyn testified the interview in which appellant admitted being inside the house and described the burglary took place several days *after* Mrs. Lewter had positively identified the cuff links. Because Mrs. Lewter had identified the cuff links several days *before* appellant's admission, the art. 38.22, Sec. 3(a)(c) argument is inapposite. Under either version of the facts, to admit the oral statement was error.

Appellant contends further the entire investigation subsequent to appellant's identi-

fication of the Lykins photograph should have been suppressed as "fruits of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Stated differently, appellant argues to this Court that everything flowing from the custodial identification made after the trailer search, which was later invalidated, should be suppressed.

■ The United States Supreme Court has recently decided two cases dealing with when and how custodial statements made subsequent to invalid arrests may be used. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Brown*, the Court established a case by case analysis employing the following guidelines:

> The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, (citations omitted) and, particularly, the purpose and flagrancy of the official misconduct are all relevant. (citation omitted) The voluntariness of the statement is a threshold requirement ... And the burden of showing admissibility rests, of course, on the prosecution. 422 U.S. at 603–604, 95 S.Ct. at 2261–2262.

Applying these guidelines to the case at bar, the State has met its burden. Appellant was warned; the identification came a full day after the arrest. The police misconduct was merely technical. The officers were working pursuant to a warrant that was later invalidated. *See Brown, supra*, 422 U.S. at 611, 95 S.Ct. at 2265 (Powell, J., concurring). Their conduct was certainly not purposeful or flagrant. Also, the trial court expressly found the identification was voluntarily given. We would add that the identification was not inculpatory per se. It only led Detective Buntyn to more evidence.

For a recent Texas treatment of the *Brown/Dunaway* test see *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1981).

Moreover, it is now the federal law in this Circuit that evidence will be admitted where the government can show the police, in good faith, thought its conduct was proper. *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980). Certainly Detective Buntyn, working pursuant to a later invalidated warrant, was investigating in good faith. Given the *Brown* test and the indirect use of the custodial identification, we will not extend the *Wong Sun* doctrine so far as to invalidate the entire subsequent criminal investigation.

Buntyn's testimony concerning what he observed and learned during his later investigation was properly admitted into evidence.

Finally, we have considered appellant's challenge to the sufficiency of the evidence and it is overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial.