## STATE OF CONNECTICUT *v.* KENT K. HUEY
## (2253)

TESTO, HULL and DUPONT Js.

Argued January 17—decision released May 15, 1984

*Joette Katz,* assistant public defender, with whom, on the brief, was *Charles D. Gill,* public defender, for the appellant (defendant).

*Lawrence J. Tytla,* deputy assistant state's attorney, with whom, on the brief, were *Dennis Santore,* state's attorney, *Anne Dranginis,* assistant state's attorney, and *Michael Sweeney,* law student intern, for the appellee (state).

HULL, J. The defendant appeals[1] from a sentence imposed upon him after he pleaded guilty to sexual

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

assault in the third degree in violation of General Statutes § 53a-72a.[2] He raises three issues: (1) whether there was a factual basis for his plea of guilty; (2) whether a court can reconsider the sentence it imposed before that sentence is executed; and (3) whether the court imposed the sentence on the basis of alleged criminal behavior which was not proscribed by the statute to which he pleaded guilty.

The defendant was arrested on April 29, 1979, and charged with burglary in the first degree in violation of General Statutes § 53a-101 and with sexual assault in the first degree in violation of General Statutes § 53a-70. In a bill of particulars, the state alleged that the defendant, while armed with a knife, had entered an apartment in New Milford with the intent to commit a sexual assault therein. Once inside he compelled the female occupant to engage in both vaginal and oral sexual intercourse by the use of force and threat of force against her person.

Plea bargaining did not initially result in a disposition of the case. On October 2, 1979, with the agreement of all parties, a presentence investigation and report was ordered. On February 26, 1980, counsel met in the trial judge's chambers at which time the case was set down for plea and sentence on February 28, 1980. The defendant's counsel submitted a detailed sentencing memorandum to the court urging a suspended

---

[2] General Statutes § 53a-72a provides as follows: "(a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person whom such person knows to be related to such person within any of the degrees of kindred specified in section 46b-21.

"(b) Sexual assault in the third degree is a class D felony."

Sexual contact is defined in General Statutes § 53a-65 (3) as follows: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor."

sentence with successful compliance with a religiously affiliated program known as the "Lighthouse" program to be a special condition of probation.

On February 28, 1980, the defendant pleaded guilty to a substitute information charging him with one count of sexual assault in the third degree in violation of General Statutes § 53a-72a. The state made no recommendation regarding sentencing. The assistant state's attorney then recounted the facts of the offense. She stated that the defendant and the victim lived in the same apartment building. When the victim returned home from church, she was accosted by the defendant who was wearing a ski mask and a nylon stocking over his face. The defendant threatened her with a knife, made her undress, blindfolded her with her own dress and had sexual contact with her. These events went on for approximately thirty minutes. Upon further inquiry by the court, the assistant state's attorney stated that, if the case went to trial, the victim would testify that penetration had occurred. The assistant state's attorney also alluded to a statement made by the defendant in which he admitted that he fondled the victim's breasts and "performed oral-genital sex to a fair degree." This was in fact corroborated by the victim's statement. The assistant state's attorney indicated that the state would have difficulty proving penetration because no medical tests were performed on the victim, who had taken a bath immediately after the offense.

The defendant expressly admitted all of the facts of the offense as recited above except the part about vaginal intercourse. He admitted that he had fondled the victim, but claimed that he had had second thoughts and had stopped before intercourse occurred. The trial judge then accepted the defendant's plea, finding that there was an adequate factual basis. The judge stated that he had read both the presentence report and the sentencing memorandum prior to the plea.

The sentencing took place immediately after the plea. The defendant spoke on his own behalf. Under questioning by the court, he again denied penetration but admitted that the victim had requested that he wear a condom and when she could not find one he permitted her to insert a diaphragm. The court indicated on two occasions that the defendant did not deny intercourse prior to the date of the sentencing.

At sentencing, the court emphasized the seriousness of the offense, even by the defendant's own account. It found strong evidence of premeditation and a strong inference of sexual intercourse. The court then stated that the defendant's denial of intercourse undercut a timely rehabilitative effort. The court then imposed a sentence of not less then two or more than four years.[3]

---

[3] The court made the following remarks before imposing sentence on February 28, 1980:

"The Court: I want to ask more questions, Mr. Gill. I'll permit you to speak afterwards, but I just have some more information I want to get.

"Your counsel's presentence memorandum, sentencing memorandum, Mr. Huey makes reference to, in discussing the lack of evidence of actual sexual intercourse, penetration, to the fact that apparently the victim at some point before the intercourse, what she claims was the intercourse, requested that you wear a condom. Apparently there was a search for one, and then she went and inserted the diaphragm. Now, that doesn't appear in the presentence report, that appears in your counsel's statement in your behalf. Is that true?

"Mr. Huey: Yes, sir.

"Mr. Gill: Your Honor, it appears in her statement to the police.

"The Court: It appears in her statement. It found its way from her statement into the presentence reference you submitted, and that's how I became aware of it because it doesn't appear in the presentence report. The presentence report simply says according to the victim there was penetration, there was sexual intercourse which the defendant denies. What happened about that, how did that happen?

"Mr. Huey: I don't understand the question, sir.

"The Court: Well, the report says that there was a search for a condom and she put in a diaphragm, tell me what happened.

"Mr. Huey: Well, she wanted me to use condoms, and she told me where they were at, and I said that I didn't know where they were at. She asked me if she could search for them, and I allowed her to, and she looked and she couldn't find them. An then she said, 'May I wear a diaphragm?' and

The defendant then moved for a hearing to reconsider the sentence claiming that the court had improperly considered the disputed evidence of whether

I told her, yes, she could. So she got her diaphragm out of a drawer and inserted it.

"The Court: And then what happened?

"Mr. Huey: Uhm—She laid back down; I fondled her a little bit more; and I got second thoughts about what I was doing, and began to feel guilty, and so I left.

"The Court: But you are aware that she said that sexual intercourse took place.

"Mr. Huey: Yes sir, I'm aware of that.

"The Court: Mr. Gill, you made a reference in your last presentation to the presentence report saying that the defendant is guilt ridden.

"Mr. Gill: Yes, your Honor.

"The Court: Can you direct me to that in the presentence report, I don't find it, maybe I overlooked it.

"Mr. Gill: It's on page five, your Honor. The top sentence, the defendant appears to have remorseful or guilt ridden —

"The Court: Okay.

"Mr. Gill: It also appeared in his statement to the police.

"The Court: All right. Is there anything you want to add further? You wanted to say something.

"Mr. Gill: Your Honor made reference to the other visits in the home. My observation of the case, it seemed to be a fantasy building up over a long time. Without anymore details than that because I don't think it benefits anybody to elaborate on them. But I think he's put his cards on the table, he's made a complete open statement as to his total involvement here. I think that the truth is known to the Court, as the Court's function to find it. And I remain at the position that I think it's a reasonable and viable alternative to incarceration for him at this juncture in his young life to stay in close proximity to his family and receive the benefits from so many others similarly situated.

"The Court: Anything further you wish to say, Mr. Huey?

"Mr. Huey: No, sir.

"The Court: Okay. I recognize from what the State's Attorney has said that apparently there were possible legal impediments to a conviction in this case. Based on the fact that apparently there was some question about the confession, and there would have been some difficulty in linking the defendant to the offense absent the confession. I recognize also that there certainly had to be a significant risk that the defendant would have been convicted of the more serious offense and it seems to me that the reduction of the charge from the first degree sexual assault and burglary in the first degree to one count of sexual assault in the third degree essentially gives the defendant the full benefit of those questions and the risks to the State in not having the defendant convicted and the risk to the defendant

vaginal sexual intercourse had occurred. The court denied the motion and ruled that it did not have the power to reconsider the sentence imposed and that even if it did have such power, it would not exercise it.

in avoiding the conviction of the more serious charges. I don't question the effectiveness of the Roloff Enterprise's program. It seems to me for a lot of people it's obviously been very good, and it may very well be very good for a rehabilitative program for the defendant.

"There are two things that point me in another direction. The first is the seriousness of the crime. The seriousness of the crime even by the defendant's version. And by the defendant's, I'll give him credit at least for being candid today about him being in the bedroom before the incident, and then being there again two weeks after the incident. Whether out of fantasy or not, certainly it was a fantasy that had become reality in which he was acting out and making very real.

"The other thing that concerns me is something that I find very troubling about the whole notion of the defendant's efforts to rehabilitate himself. And that is, it is very difficult for me to accept the defendant's version that there was no sexual intercourse here. The victim says that there was. True, there was no medical evidence to corroborate that, that's not a requirement of law. The circumstantial facts which the defendant has admitted to and which are there very clearly create in my mind more strongly the inference that there was sexual intercourse here, in addition to the fondling, in addition to the oral-genital contact which the defendant has admitted and corroborates the victim's version. And that unwillingness or inability to admit to himself or yourself what seems to me from what's been presented here, undercuts in my mind a truly rehabilitative effort.

"It also, by another statement that the defendant made, apparently to the presentence report, in which he says that he disclaims that there was any extensive part of premeditation on his part. If he was there before; if you put on a mask, as I gather, two masks, a mask and a nylon stocking; had a knife; knew the person; permitted her to insert a diaphragm; search for a condom, the inference I draw there is that she was afraid of pregnancy by a rapist or venereal disease or both. That belies to me the defendant's position today, and in the presentence report that he didn't have premeditation, and that he, once he was in the apartment, he didn't think he would actually carry out the offense. I also note, and there is some discrepancy from what he said today, but at least the offender's version after the victim's version is given in which the statement is made there was sexual intercourse, the following notation appears, Huey did allow that the instant offense evolved as noted above. There is no denial here. Of course this report was back in November, I gather, some time around there. There is no denial that there was sexual intercourse.

"Based on all those factors, based on the seriousness of the crime, which I think is a very serious crime; based on the need for punishment, which

## I

The question of whether there was a factual basis for the plea is twofold: (1) that the definition of sexual contact in General Statutes § 53a-65 (3) requires that the other person be not married to the actor; and (2) that, under General Statutes § 53a-67 (b), it is an affirmative defense that the defendant and the alleged victim were living together by mutual consent in a relationship of cohabitation. Since no such affirmative defense was made by the defendant, we do not consider this prong of the question.

On appeal, the defendant now claims for the first time that there was no factual basis establishing that the parties were not married to each other.[4] Practice Book § 713 provides: "The judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the plea." Guilty pleas have been invali-

will carry, I think two bases to it. It will punish the defendant for his conduct, and it will, I think, to some extent, serve to deter he and others similarly situated in committing crimes like this.

"I'm going to reject the defendant's request. And I cannot look at it, although there are untraditional aspects to this case, there are also some very conventional aspects to this case. It's the judgment of the Court that the defendant be committed to the custody of the Commissioner of Corrections for a period of not less than two or more than four years."

[4] We will consider the claim on the authority of *State* v. *Deboben,* 187 Conn. 469, 475 n.4, 446 A.2d 828 (1982), which states: "Although the establishment of a factual basis for a guilty plea is required by our rules; Practice Book § 713; it is not at all clear that such proof is constitutionally mandated." Cf. *State* v. *Battle* 170 Conn. 469, 473, 365 A.2d 1100 (1976); *Consiglio* v. *Warden,* 160 Conn. 151, 163, 276 A.2d 773 (1970); see also *Henderson* v. *Morgan,* 426 U.S. 637, 651, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976) (White, J., concurring); *Brady* v. *United States,* 397 U.S. 742, 748 n.6, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Oaks* v. *Wainwright,* 445 F.2d 1062 (5th Cir. 1971). Giving the defendant the benefit of the doubt in this case, we have decided to consider his claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See generally *State* v. *Cutler, 180 Conn. 702, 705, 433 A.2d 988 (1980); State* v. *Marra,* 174 Conn. 338, 345, 387 A.2d 550 (1978); and *State* v. *Battle,* supra, all of which subsume that a constitutional question is involved since if a plea was not supported by a factual basis, it was not knowingly and intelligently made.

dated in those cases where the facts to which the defendant assented on the record failed to reveal all the elements of the crime charged. *State* v. *Cutler,* 180 Conn. 702, 704–705, 433 A.2d 988 (1980); *State* v. *Marra,* 174 Conn. 338, 343–45, 387 A.2d 550 (1978); *State* v. *Bugbee,* 161 Conn. 531, 535, 290 A.2d 332 (1971).

In this case the state claims that there is on the record sufficient information from which to establish a factual basis for the guilty plea. Prior to the acceptance of the plea, the assistant state's attorney stated that "the victim of the crime and Mr. Huey *and his family* live in the same apartment building in New Milford, Connecticut." (Emphasis added.) The bill of particulars reveals that the victim and the defendant did not share the same surname.

Were this not sufficient, the court could rely on other sources of information available to it. The court stated in *State* v. *Marra,* supra, 346, that: "The fact that the record reveals inadequate factual support for either plea in no way suggests that further facts, properly submitted to a court or jury, could not support a conviction for the crimes charged. That question is not now before this court. The only issues decided concern the sufficiency of the facts before the court at the time the pleas were entered."

An evidentiary hearing is not required on a motion to withdraw a guilty plea "if the record of the plea proceeding and other information *in the court* file conclusively establishes that the motion is without merit. See *Fontaine* v. *United States,* 411 U.S. 213, 215, 93 S. Ct. 1461, 36 L. Ed. 2d 169 (1973)." (Emphasis added.) *State* v. *Lasher,* 190 Conn. 259, 265, 460 A.2d 970 (1983), quoting *State* v. *Torres,* 182 Conn. 176, 185, 438 A.2d 46 (1980).[5]

---

[5] This is in accord with the general view. The American Bar Association commentary endorses allowing the judge to determine the factual basis by

The court had before it and read both the presentence report and the defendant's sentencing memorandum at the time of the plea. The defendant's sentencing memorandum, prepared by his counsel, specifically mentioned his wife and two children and stated that the defendant enjoyed a happy marriage. The memorandum stated that the same pastor assisted both the defendant and the victim and their respective spouses subsequent to the crime. There are numerous other references to the defendant's family in the memorandum.

Evidence known to the judge both from the record and from the file conclusively established the factual basis for the plea. The defendant's claim to the contrary is without merit.

## II

On May 15, 1980, the defendant moved for a hearing to reconsider the sentence which the court denied after a hearing on May 28, 1980.[6]

There is strong authority that the trial court had residual power to alter the indefinite sentence imposed upon the defendant. "[A] sentence in a criminal case may be modified at any time during the term of court at which it was imposed, if no act has been done in exe-

---

"any appropriate procedure which seems best for his court and the kind of case involved." ABA Standards, Pleas of Guilty 33 (1968); see *People v. Nyberg,* 64 Ill. 2d 210, 214, 356 N.E.2d 80 (1976), cert. denied, 430 U.S. 970, 97 S. Ct. 1654, 52 L. Ed. 2d 362 (1977) (court may use any means at its disposal which will satisfy inquiry as to whether or not factual basis exists); *State v. St. Clair,* 194 Neb. 519, 520, 233 N.W.2d 780 (1975) (court may consider material in presentence reports); *State v. Doherty,* 261 N.W.2d 677, 682 n.10 (S.D. 1978) (trial court may consider transcripts, sworn statements, oral testimony, police reports, or other material to satisfy itself of the existence of factual basis).

[6] The sentence was reviewed by the sentence review division on April 21, 1981. The division affirmed the sentence after finding that the sentence was justified and was not excessive.

cution of it." *State* v. *Nardini,* 187 Conn. 109, 123, 445 A.2d 304 (1982); *State* v. *Pallotti,* 119 Conn. 70, 74, 174 A. 74 (1934). The record before us does not furnish any basis for determining what steps, if any, the defendant may have taken after sentencing that would negate this rule.

The defendant's sentence was stayed by taking the appeal. Practice Book § 946; General Statutes § 54-95. Practice Book § 934 provides for reductions in definite sentences; § 935 provides for the correction of an illegal sentence within 90 days. Neither section applies in this case since the sentence was indefinite and not illegal. We need not decide this issue, however, since the court's ruling, if erroneous, is harmless error since, as the court indicated, the claimed error could not possibly have changed its decision. See *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980).

### III

The defendant's claim that the court improperly considered evidence of the defendant's having penetrated the victim's vagina is essentially a claim that the sentence is excessive.

The trial court carefully considered the direct and inferential evidence as well the defendant's earlier statement to the effect that sexual intercourse did take place. In denying the defendant's request for a suspended sentence and conditional probation, the court quite properly considered the defendant's refusal to admit to penetrating the victim, in the face of what the court felt was strong evidence of sexual intercourse, as indicative of a lack of a rehabilitative effort on the part of the defendant.

In any event, it has long been the law in Connecticut that an appellate court will not review the proper exercise of the court's discretion in sentencing a defend-

ant within the statutory limits for the offense charged.[7] *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982); *State* v. *Williams,* 173 Conn. 545, 558, 378 A.2d 588 (1977).

The defendant claims, without citing authority in his brief, that the sentence was improper. A sentencing judge is not bound to a strict adherence to the rules of evidence which apply at a trial. The court exercises wide discretion in the sources and types of evidence which it may consider. *Roberts* v. *United States,* 445 U.S. 552, 556, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980); *Williams* v. *New York,* 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); *State* v. *Harmon,* 147 Conn. 125, 128, 157 A.2d 594 (1960); *State* v. *LaPorta,* 140 Conn. 610, 612, 102 A.2d 885 (1954); *State* v. *Van Allen,* 140 Conn. 39, 44, 97 A.2d 890 (1953); *State* v. *Cuchelow,* 128 Conn. 323, 324, 22 A.2d 780 (1941); see *Williams* v. *Oklahoma,* 358 U.S. 576, 585, 79 S. Ct. 421, 3 L. Ed. 2d 516, reh. denied, 359 U.S. 956, 79 S. Ct. 737, 3 L. Ed. 2d 763 (1959) (hearsay); *United States* v. *Cifarelli,* 401 F.2d 512, 514 (2d Cir.), cert. denied, 393 U.S. 987, 89 S. Ct. 465, 21 L. Ed. 2d 448 (1968) (evidence of other crimes for which defendant had been neither tried nor convicted.) Our statutes also recognize the wide range of information which the sentencing court should consider. General Statutes § 54-91a (c) provides, in part, that a presentence investigation should consider the circumstances of the offense, the attitude of the victim, and the criminal record, social history, and present condition of the defendant.

---

[7] The offense of sexual assault in the third degree was, as of the date of the offense on April 11, 1979, a class D felony pursuant to General Statutes § 53a-72a which was punishable by a maximum imprisonment of not less than two and one-half nor more than five years. See General Statutes § 53a-35.

The defendant's claim that the sentence was excessive properly belongs before the sentence review division.[8] See General Statutes § 51-194 et seq. The defendant's claim that the sentence was improper is without merit.

There is no error.

In this opinion TESTO, J., concurred.

DUPONT, J. (concurring). I agree with the majority in its conclusions as to the three issues raised by the defendant. I do not, however, agree with the reasoning of the majority which led it to conclude that the sentence imposed by the trial court was proper. It is my view, contrary to that of the majority, that a sentencing court may not consider, in its determination of an appropriate sentence for a defendant, the failure of a defendant to admit he is guilty of an element of a crime to which he has not pleaded guilty and with which he was not ultimately charged.

The defendant was orignally charged with the offense of sexual assault in the first degree, in violation of General Statutes § 53a-70, and with the offense of burglary in the first degree, in violation of General Statutes § 53a-101. Subsequently, the defendant pleaded guilty to a substitute information charging him with one count of sexual assault in the third degree in violation of General Statutes § 53a-72a. General Statutes § 53a-70 (a) provides that "[a] person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse . . ." whereas General Statutes § 53a-72a (a) (1) provides that "[a] person is guilty of sexual assault in the third degree when such person compels another person to submit to sexual contact . . . ."

---

[8] See footnote 6, supra.

During the course of taking the defendant's guilty plea and during the course of the sentencing which immediately followed the acceptance of the guilty plea, the defendant refused to admit to the court that sexual intercourse had taken place. Counsel for the defendant, during the sentencing hearing, urged that the defendant receive a suspended sentence and probation, the condition of which was to be successful completion of a rehabilitative program. The trial court stated that there were two things "which pointed . . . in another direction." The first was the seriousness of the crime and the second was that the defendant had made no effort to rehabilitate himself by admitting that sexual intercourse had taken place. The court stated that "it is very difficult for me to accept the defendant's version that there was no sexual intercourse here."[1]

The defendant claims that the court erred in imposing a sentence based upon alleged criminal behavior which was not proscribed by the statute to which the defendant pleaded guilty. The majority of this court views this claim as being a complaint that the sentence was excessive. I disagree. The issue posed here is not whether the sentence was excessive but whether certain minimal due process standards attach to sentencing hearings which would preclude the sentencing court from considering, in its quest for an appropriate sentence, the fact that the defendant persisted in his claim of innocence as to an element of a crime to which he had not pleaded guilty and with which he was ultimately not charged.

Although an appellate court will not review the proper exercise of a trial court's discretion to fix a sentence which is within the statutory limits of the crime

---

[1] The presentence report is somewhat contradictory. It states that the victim claimed that sexual intercourse had occurred but that the defendant denied it. The report also notes, after giving the victim's version, that the defendant "did allow that the instant offense evolved as noted above."

for which the defendant is being sentenced; *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982); recent decisional trends cast doubt on whether that discretion is unfettered by any guarantee of due process. The case of *Williams* v. *New York,* 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949), is the apex of the absolute no-due-process-at-sentencing rule since it approved the use of presentence reports by sentencing courts, regardless of whether such reports contained hearsay, and regardless of the opportunity of the defendant to rebut any such hearsay statements. In a more recent case, *Gardner* v. *Florida,* 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977), the Supreme Court of the United States held that the sentencing process should satisfy some due process requirements in cases involving capital punishment. Legal scholars generally agree that the logic of *Gardner* should be extended to other types of cases and that certain basic due process principles should govern sentencing procedures. Nemerson, "Coercive Sentencing," 64 Minn. L. Rev. 669, 740–750 (1980); Fennell & Hall, "Due Process at Sentencing; An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts," 93 Harv. L. Rev. 1615 (1980).

A sentencing hearing, following a guilty plea, is, to the particular defendant, the only really critical stage of the criminal proceedings. A total dichotomy should not exist between the due process procedures required of the state to prove a defendant guilty and the lack of any due process procedures at a sentencing hearing. It may be appropriate at sentencing for a trial judge to attempt to coerce statements from a defendant about the particular crime in order to gain additional information about it for law enforcement officials and to fix a higher sentence for defendants who do not provide such information than for those who do. *United States* v. *Liddy,* 397 F. Sup. 947, 951 (D.D.C. 1975);

cf. *United States* v. *Garcia,* 544 F.2d 681, 682–83 (3d Cir. 1976). Furthermore, there is no impropriety in examining, for the purposes of sentencing, a wide range of information such as the circumstances of the offense, the attitude of the victim, and the criminal record, social history and present condition of the defendant. General Statutes § 54-91a (c). I do not agree, however, that it is appropriate, during sentencing, to seek an admission of guilt of a crime of a higher degree of criminality than the crime for which the defendant is being sentenced, under the guise of testing the defendant's repentence or his potential for rehabilitation.

To force the admission of guilt, at a sentencing which follows a guilty plea, of a crime with which the defendant is not charged might jeopardize the defendant's rights in the future, either in connection with a retrial or with an independent trial claiming civil rights violations. See *Haring* v. *Prosise,* 462 U.S. 306, 103 S. Ct. 2368, 76 L. Ed. 2d 595, 603–604 (1983); *United Brotherhood of Carpenters & Joiners of America* v. *United States,* 330 U.S. 395, 412, 67 S. Ct. 775, 91 L. Ed. 973 (1947); *United States* v. *Broome,* 628 F.2d 403, 404–405 (5th Cir. 1980).

A trial court should not consider, at sentencing, facts which underlie counts which were dismissed pursuant to a plea bargain. *People* v. *Jones,* 108 Cal. App. 3d 9, 16, 166 Cal. Rptr. 131 (1980). It should not make inquiry into whether the defendant intends to appeal the conviction since that inquiry gives rise to the inference that the severity of the sentence rests upon the defendant's response. *Mahoney* v. *State,* 13 Md. App. 105, 113, 281 A.2d 421 (1971), cert. denied, 409 U.S. 978, 93 S. Ct. 306, 34 L. Ed. 2d 241 (1972). After a verdict of guilty, a defendant may continue to assert his innocence and should not be penalized for doing so at a sentencing hearing. *United States* v. *Wright,* 533 F.2d 214, 216 (5th Cir. 1976); *People* v. *Costello,* 95 Ill. App. 3d 680,

687, 420 N.E.2d 592 (1981). A defendant's assertions of innocence at his sentencing hearing, after a trial finding him guilty, should not result in a greater penalty, even if the sentencing court believes that he is lying about his innocence. *Poteet* v. *Fauver,* 517 F.2d 393, 395 (3d Cir. 1975); *United States* v. *Rodriguez,* 498 F.2d 302, 312–13 (5th Cir. 1974); *Thomas* v. *United States,* 368 F.2d 941, 945–46 (5th Cir. 1966). A defendant may not be disadvantaged in the sentence rendered because of the trial court's disbelief in the defendant's answers to the court's questions regarding the defendant's failure to confess fully to other criminal behavior unrelated to the particular crime for which he is being sentenced. *People* v. *Westerfield,* 71 Mich. App. 618, 625, 248 N.W. 2d 641 (1976).

The defendant in the present case should not have been asked to admit an element of a crime with which he was not charged. To do so was to exact a price from him for exercising his constitutional right to force the state to prove him guilty of sexual assault in the first degree. He chose not to plead guilty to that crime and the state chose not to proceed with a trial for that offense. When the state elected to file a substitute information charging him with the lesser offense of sexual assault in the third degree and he chose to plead guilty to the lesser offense, the trial court was then precluded from attempting, during sentencing, to obtain an admission of guilt of the greater crime. The failure of the defendant to admit that he had sexual intercourse with the victim does not necessarily indicate his reluctance to be restored to a crime-free life. It is equally indicative of his own belief in his own innocence of the crime of sexual assault in the first degree.

Although it is my opinion that the trial court should not have tainted its sentence with the inference that a persistence by the defendant that he was innocent of the crime with which he was originally charged would

result in a heavier sentence, I find that the sentence should not be disturbed. The sentence, on the facts of this case, was warranted even without a belief of the trial court in the defendant's desire for rehabilitation. *Mahoney* v. *State,* supra; *People* v. *Costello,* supra.