## State of Vermont v. Angela M. Thompson

[613 A.2d 192]

No. 91-180

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 15, 1992

*Robert M. Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Plaintiff-Appellee.

*David C. Sleigh*, St. Johnsbury, for Defendant-Appellant.

**Dooley, J.** Defendant, Angela Thompson, appeals from a $500 fine, imposed after she was convicted of simple assault. She claims the sentence violated her due process rights because it was imposed after she asserted her right to appeal from a proposed lower sentence which contained illegal elements. We agree and reverse.

Defendant was convicted of simple assault entered into by mutual consent following a fight with another woman. 13 V.S.A. § 1023(b). At the sentencing hearing, the court first proposed a $500 fine with all but $100 suspended and ordered the defendant to pay $200 in restitution. When defendant argued that the restitution part of the sentence was illegal and indicated that she might appeal, the court stated:

> If the defense is going to challenge a restitution order, and perhaps there is a legal basis for the challenge, then some of what I had in mind is what we would normally think of as pain and suffering and that is generally not the kind of thing we deal with when we talk about restitution. I may just impose a fine of $500 and get on with it.

Defendant then sought a statement from the court on the record showing the purpose of the restitution order. The court agreed to give it, but stated, "I would like to know what the defense's position is on that." Defendant's lawyer answered that he had thirty days to decide and continued to indicate that restitution could not be awarded to a mutual combatant in a fight. The court then changed its sentence and said:

> Well, if it is going to turn out to be an issue and potentially cause this litigation to continue, I think finality is more important and we will just end the discussion of restitution and I will order that payment of a fine of $500 which is what I indicated when the matter was brought to my attention by the Clerk as to whether we could resolve this without probation. That discussion came up when we were deciding how to schedule this matter for further proceedings.

The discussion referred to by the court is not on the record. ▮ Defendant raises two issues: (1) whether the restitution award in the court's proposed sentence was lawful; and (2) whether her due process rights were violated by the imposition of a higher sentence after she exercised her right to challenge the lower, potentially illegal sentence. Since the court did not impose its proposed sentence and we agree that the sentence actually imposed denied due process, we reach only the second issue.

The leading case on due process constraints in sentencing options is *North Carolina v. Pearce*, 395 U.S. 711 (1969). The issue

in *Pearce* was whether a defendant who obtained a new trial on appeal could be sentenced to a harsher sentence upon reconviction. *Id.* at 713. The Court held first that the imposition of a penalty on defendant for successfully pursuing an appeal, whether or not the appeal involved a constitutional issue, violates due process of law. The Court summarized its holding on this point as follows:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Id.* at 725. In order to protect the constitutional right, the Court created a rebuttable presumption that a harsher sentence following retrial is vindictive unless "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" is shown to justify the sentence. *Id.* at 726.

■ Although the presumption established in *Pearce* has been narrowed by later decisions of the United States Supreme Court, see *State v. Percy*, 156 Vt. 468, 481–82, 595 A.2d 248, 255–56 (1990), the basic principle remains that sentences imposed in retaliation for a successful exercise of the right of appeal deny due process of law. See *Alabama v. Smith*, 490 U.S. 794, 799 (1989). Although *Pearce* involved a successful challenge to the defendant's conviction, its rationale and holding apply equally to a challenge to the legality of a sentence. See *Stewart v. Smith*, 129 Vt. 182, 183, 274 A.2d 504, 505 (1971) (*Pearce* "requires that there be no increase in the penalty on resentencing, unless the judge's reasons affirmatively appear"). Thus, it would have been a violation of due process under *Pearce* in this case if (1) the court had imposed its proposed sentence; (2) defendant had prevailed on appeal in her claim that the restitution component was unlawful; and (3) the court had then imposed a harsher resentence to retaliate against de-

fendant for her successful appeal. The questions we face here are whether the same result should obtain if the court acted to prevent an appeal and whether the sentence actually imposed in the instant case was vindictive.

We do not hesitate in holding that *Pearce* applies where a sentence is imposed in retaliation for a threat of appeal and in order to prevent the appeal. While this is a matter of first impression in Vermont, other jurisdictions have addressed this specific issue. For example, the Maryland Court of Special Appeals held it improper for a judge to inquire prior to sentencing whether the defendant intends to appeal. *Mahoney v. State*, 13 Md. App. 105, 113, 281 A.2d 421, 425 (1971), *cert. denied*, 409 U.S. 978 (1972). Drawing on the rule in *Pearce*, the Maryland court reasoned:

> It is improper for a trial judge to inquire prior to imposition of sentence as to whether or not a defendant contemplates filing an appeal, because such an inquiry gives rise to an inference that the severity of the sentence is to be measured by the response of the defendant. Such a query is not relevant to the sentencing. . . . It logically follows that if the courts are prohibited from exercising vindictiveness on a retrial because of a defendant's successful appellate attack, they are likewise prohibited from exercising vindictiveness because of a defendant's intention to appeal.

*Id.*; see also *Colburn v. State*, 501 S.W.2d 680, 683 (Tex. Crim. App. 1973) (holding that *Pearce* prevents the trial court from increasing punishment because defendant expressed desire to appeal). These decisions are consistent with our holding in *State v. Buck*, 139 Vt. 310, 314–15, 428 A.2d 1090, 1093 (1981), that a sentence cannot be conditioned on a "restriction or prohibition" of the right of appeal.

Thus, the validity of this sentence turns on whether it was imposed vindictively in response to defendant's argument that the court's proposed sentence was illegal and her expressed intent to appeal. In addressing this question, it is important to emphasize certain facts the sentencing hearing transcript discloses. First, it is clear that defendant would have faced a total financial penalty of $300, $100 as a fine and $200 as restitution, if she had not questioned the court's right to require restitu-

tion. In fact, the court twice declared its intention to impose that sentence, changing it only because of defendant's continued assertion that it was unlawful. Second, the final sentence, a $500 fine, was harsher than that originally imposed. Third, if defendant had indicated that she would not appeal the original sentence, it would not have been changed to the harsher sentence. This was made clear by the court's statements that if the sentence "is going to turn out to be an issue and potentially cause this litigation to continue, I think finality is more important," and "if the defense is going to challenge a restitution order, . . . I may just impose a fine of $500 and get on with it." Moreover, the court requested "to know what the defense's position is on that." Fourth, the record shows no nonretaliatory justification for the harsher sentence. The only reason given, that the court was considering such a sentence before the sentencing hearing, fails to explain the differential impact of the two sentences on defendant.

We think that the sentence was vindictive as that term is used in *Pearce*. From the full statement of the *Pearce* rule, the Court explained the use of the term "vindictiveness" as referring to a retaliatory motivation. *Pearce*, 395 U.S. at 725. There can be no doubt that the court intended "to impose a penalty upon the defendant's right of appeal and to affect the exercise of [her] right to do so." *State v. Patton*, 221 N.C. 117, 119, 19 S.E.2d 142, 144 (1942); see also *State v. Davis*, 155 Vt. 417, 421, 584 A.2d 1146, 1148 (1990) (when defendant rejects a plea bargain, sentence would be vindictive if it improperly weighed defendant's failure to plead guilty); *Cleaveland v. State*, 507 S.W.2d 769, 770 (Tex. Crim. App. 1974) ("trial court endeavored to chill this appellant's right to appeal"); *Colburn v. State*, 501 S.W.2d at 683 (harsher sentence was imposed "to punish the appellant more severely because he gave notice of appeal"). The absence of an alternative reason for the harsher sentence makes the conclusion inescapable that the court was retaliating for defendant's exercise of the right to contest an arguably illegal sentence.

Even were there no presumption at all, it is clear the higher sentence here was vindictive.[1]

■ There is a related problem that is particularly apparent in this case. In effect, the court engaged in a kind of sentence bargaining with defendant in the hope that it could induce her to accept a final resolution. The risk in such a situation is that the court will try to maximize the likelihood that defendant will accept the resolution by making the alternative particularly undesirable. Thus, the sentence imposed here could reflect the court's negotiating strategy rather than its view of the appropriate punishment for defendant for the offense. This type of bargaining chills the right of appeal, see *State v. Goodloe*, 196 Neb. 381, 383, 243 N.W.2d 69, 70 (1976), and puts the sentencing court in the inappropriate position of fashioning a "deal" rather than a sentence.[2] A fundamental concern of the *Pearce* rule is to

---

[1] The Texas Court of Appeals has adopted a separate rule for this type of case:
  [O]nce a trial court has knowledge of a convicted felon's intention to appeal, it is almost impossible for a reviewing court to determine whether the assessment of punishment was due to vindictiveness. Therefore, in our opinion the best resolution is [to] . . . prevent [ ] the trial court from even inquiring as to whether a convicted felon intends to appeal.

*Gifford v. State*, 630 S.W.2d 387, 389 (Tex. Ct. App. 1982). Its reasoning was based in part on the reasoning of the Maryland Court of Special Appeals in *Mahoney v. State*, 13 Md. App. 105, 113, 281 A.2d 421, 425 (1971). The Maryland court declined, however, to find a denial of due process based on an isolated question about whether defendant intended to appeal where the record did not show that the answer affected the court's sentence and there was no indication of "passion, ill-will, prejudice, or some other unworthy motive." *Id.* at 112, 281 A.2d at 425.

We need not decide in the instant case whether we would follow the Texas Court of Appeals and prohibit all inquiry as to defendant's intent to appeal.

[2] We do allow the court to participate in plea bargaining under circumstances that promote openness and predictability of sentences. See Reporter's Notes to V.R.Cr.P. 11(e)(1). In *State v. Davis*, 155 Vt. 417, 421, 584 A.2d 1146, 1148 (1990), we held that such participation was consistent with the *Pearce* rule as long as there is not a showing of vindictiveness in the imposition of a sentence after a breakdown in plea negotiations. The difference here is that the court was conducting a negotiation between a specific, arguably illegal sentence if defendant accepted it without appeal and a harsher alternative if defendant insisted in challenging the legality of the first sentence. In the plea bargain situation, the court does not hold out a specific alternative sentence to be imposed if the defendant fails to accept the plea bargain. While defendant assumes the risk of a harsher alternative

eliminate even the possibility of retaliation so that the defendant will have no apprehension about exercising the right of appeal. *Pearce*, 395 U.S. at 725. It is impossible to eliminate such apprehension if the defendant views the court as the adversary in a negotiation.

When it concluded that its original sentence might not resolve the matter with finality, the court could have imposed a penalty not more severe than that which it originally proposed. As the Alaska Court of Appeals stated:

> Assuming the restitution award was improper, the court could substitute a fine . . . without violating [defendant's] right not to have his sentence increased so long as the fine imposed did not exceed the restitution previously required but set aside.

*Dorris v. State*, 656 P.2d 578, 584 (Alaska Ct. App. 1982). As the sentence first proposed amounted to a total payment of $300, with $200 more suspended, the subsequent fine should not have exceeded those respective amounts.

*Reversed and remanded for resentencing consistent with this opinion.*

---

in rejecting the plea bargain, the court must sentence based on the information before it without giving improper weight to defendant's failure to plead. *Id.*