337 Conn. 655        AUGUST, 2021        655

State *v.* Angel M.

## STATE OF CONNECTICUT *v.* ANGEL M.*
(SC 20106)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Kahn and Ecker, Js.**

*Syllabus*

The defendant was convicted of sexual assault in the first degree, attempt
to commit sexual assault in the first degree, and risk of injury to a child
in connection with his alleged sexual abuse of V, the twelve year old
victim. The defendant had become romantically involved with M, V's
mother, when V was approximately three to four years old. After M and
the defendant had a child, A, together, the defendant moved into a house
with M, V and A, whom the defendant also allegedly abused sexually
at a later point. At trial, the defendant testified that he had never touched
V or A in a sexually inappropriate manner and claimed that V and A
fabricated their allegations of sexual abuse in retaliation for the defen-
dant's act of hitting M and having withdrawn all financial support for
the family after moving out of the house. At his sentencing hearing, the
defendant engaged in a colloquy with the court during which he contin-
ued to deny his guilt. The court indicated to the defendant during the
colloquy that taking responsibility for his misconduct and apologizing
would help V and A but that it was the defendant's right to continue to
deny his guilt in the event that he appealed his conviction. The court
stated further that it would "not punish [him] for" continuing to deny
his guilt but that he would "not get any extra credit." After the court
sentenced the defendant to a significant period of imprisonment fol-
lowed by a significant period of probation, he appealed to the Appellate
Court, claiming, inter alia, that the trial court had violated his right to
due process by improperly augmenting his sentence for his refusal to
apologize to V and A after he had been found guilty of the crimes charged
in connection with his sexual assault of V. The Appellate Court affirmed
the judgment of conviction, concluding, inter alia, that a sentencing
court properly may consider a defendant's lack of remorse in fashioning

* In accordance with our policy of protecting the privacy interests of the
victims of sexual abuse and the crime of risk of injury to a child, we decline
to identify the victim or others through whom the victim's identity may be
ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3)
(2018); we decline to identify any person protected or sought to be protected
under a protective order or a restraining order that was issued or applied
for, or others through whom that person's identity may be ascertained.

** The listing of justices reflects their seniority status on this court as of
the date of oral argument.

State *v.* Angel M.

an appropriate sentence and also may consider a defendant's denial of culpability in evaluating his or her prospects for rehabilitation. On the granting of certification, the defendant appealed to this court. *Held* that the defendant could not prevail on his claim that the Appellate Court incorrectly concluded that the trial court had not punished him for invoking his right against self-incrimination and for refusing to apologize to V and A: the defendant's claim was belied by the trial court's sentencing remarks, in particular, the court's explicit, on-the-record assurance that it would not increase the defendant's sentence if he chose to exercise his constitutional right against self-incrimination, and nothing the court stated before announcing the defendant's sentence called into question its explicit assurance that the defendant would not be penalized for invoking that right; moreover, this court rejected the defendant's claim that a court should not be permitted to grant leniency to a defendant who accepts responsibility merely because the same leniency would be unavailable to a defendant who does not accept responsibility; furthermore, although the defendant's sentence was severe, he was effectively sentenced to approximately one half of the maximum period of imprisonment to which he was exposed for the three offenses of which he was found guilty, and, therefore, his sentence did not give rise to an inference that the court punished him for refusing to apologize to V and A.

(*Two justices concurring separately in one opinion*)

Argued September 19, 2019—officially released December 31, 2020***

*Procedural History*

Substitute information charging the defendant with the crimes of sexual assault in the first degree, attempt to commit sexual assault in the first degree, and risk of injury to a child, brought to the Superior Court in the judicial district of Hartford, where the court, *Mullarkey, J.*, denied the defendant's motion to preclude certain evidence; thereafter, the case was tried to the jury before *Mullarkey, J.*; verdict and judgment of guilty, from which the defendant appealed to the Appellate Court, *Keller, Mullins* and *Elgo, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*** December 31, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Angel M.

*Pamela S. Nagy*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *Anne F. Mahoney*, state's attorney, for the appellee (state).

*Opinion*

PALMER, J. Following a jury trial, the defendant, Angel M., was convicted of sexually assaulting the twelve year old daughter of his romantic partner and sentenced to a total effective prison term of thirty-three years. The defendant appealed to the Appellate Court, claiming, among other things, that the trial court had violated his right to due process at sentencing by penalizing him for refusing to apologize for his criminal misconduct. See *State* v. *Angel M.*, 180 Conn. App. 250, 253, 286, 183 A.3d 636 (2018). According to the defendant, who maintained his innocence both at trial and at the time of sentencing, the trial court's enhancement of his sentence for that reason was fundamentally unfair because it contravened his constitutional right against self-incrimination insofar as any such apology necessarily would have required him to admit guilt. See id., 286–88. The Appellate Court rejected the defendant's claim, concluding that the record did not support his contention that the trial court had increased his sentence because of his unwillingness to issue an apology to the victims; see id., 290–91; and we granted the defendant's petition for certification to appeal. See *State* v. *Angel M.*, 328 Conn. 931, 182 A.3d 1192 (2018). We agree with the Appellate Court and, accordingly, affirm its judgment.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "M is the mother of the victim. M became romantically involved with the defendant when the victim was approximately three or

State *v.* Angel M.

four years old. M had two children, G and the victim, from a previous relationship. The defendant was a father figure to the victim, and she was considered his stepdaughter.

"Approximately one year after the defendant and M began dating, they had a child together named A. At some point in 2000, the defendant moved in with M. They lived together with the three children, the victim, G, and A, in an apartment in [the city of] Hartford until they purchased a house in 2008.

"In 2006 or 2007, when the victim was approximately twelve years old,[1] she arrived home after school and went into her mother's bedroom to play a game on the family's computer. While she was playing on the computer, the defendant came up behind her and began kissing her neck. The victim froze. Then the defendant picked her up and threw her on the bed. He locked the bedroom door and 'did something near the side of the bed' before lifting up the victim's shirt and licking her breasts. The defendant proceeded to lick the victim's vagina before taking off his pants and attempting to put his penis in her vagina. The victim closed her legs, and the defendant got off of her.[2]

---

[1] "The victim did not remember exactly how old she was when the sexual abuse occurred, but she testified that she would have been twelve or thirteen because she was in middle school when it happened. She also testified that the abuse took place while the family was living in the apartment in Hartford, during the spring or summer, rather than the house that the defendant and M purchased in 2008." *State* v. *Angel M*., supra, 180 Conn. App. 254 n.1.

[2] "In addition to the victim's testimony regarding the sexual abuse, the jury heard testimony from three constancy of accusation witnesses. The first was K, the victim's childhood friend. She testified that when they were in fifth or sixth grade, the victim told her that the defendant had molested her. She also testified that the victim provided more details about the molestation when they were freshmen in high school. K's father was the second constancy witness. Although he could not remember an exact date, he recalled the victim telling him that the defendant had molested her. The third witness, G, the victim's brother, testified that the victim had told him via a text message that she had been 'touched.' He testified that he received the text message at some point in 2010 while he was in Europe.

State *v.* Angel M.

"Several years after that incident, on the evening of December 18, 2011, the defendant and M were involved in an incident outside of a restaurant in Newington. That evening, M had gone to the restaurant without the defendant. She was socializing with a female friend and another man. The defendant, who had been waiting impatiently for her to come home, decided to go to the restaurant to find her. When he arrived, he saw M socializing with a man he did not recognize. He became angry. He confronted M in the parking lot, and an argument ensued. The defendant struck M multiple times. The police arrived shortly thereafter and arrested the defendant. In January, 2012, a protective order was issued as a result of the incident. Thereafter, the defendant stopped providing financial assistance to M, and he moved out of the house and into his own apartment.

"Shortly after the defendant moved out of the house, A ceased all communication with him. The lack of communication between A and the defendant concerned M. As a result, M asked the victim to talk to A in order to figure out why A was ignoring the defendant. On February 7, 2012, the victim started a conversation with A via text messages concerning the change in [A's] relationship with the defendant. In those communications, A told the victim that the defendant had molested her. The victim also revealed that the defendant had molested her, and the victim encouraged A to tell their mother.

"Shortly after this conversation, the victim told M that A had been abused by the defendant. Upon learning

---

"The victim also testified that the defendant would kiss her neck 'and stuff' every time that she would go on the computer and that on one occasion she woke up and saw the defendant in her bedroom pulling his hands out of his pants. In this case, however, the state only charged the defendant on the basis of the single incident in her mother's bedroom that involved cunnilingus and attempted vaginal penetration." *State* v. *Angel M.*, supra, 180 Conn. App. 254 n.2.

State *v.* Angel M.

about the abuse, M contacted A's therapist, Mary Mercado, who reported the abuse to the Department of Children and Families (department). The department referred the case to the Hartford Police Department, and Detective Frank Verrengia investigated the case. The victim and A both participated in forensic interviews in March, 2012. The victim disclosed her abuse during [a] forensic interview on March 8, 2012. Following an investigation, the police arrested the defendant on April 18, 2013. The case involving A, however, was administratively closed in May, 2013.''[3] (Footnotes in original.) *State* v. *Angel M.*, supra, 180 Conn. App. 253–55.

"The state charged the defendant with one count of sexual assault in the first degree [in violation of General Statutes § 53a-70 (a) (2)], one count of attempt to commit sexual assault in the first degree [in violation of § 53a-70 (a) (2) and General Statutes § 53a-49], and one count of risk of injury to a child [in violation of General Statutes § 53-21 (a) (2)].'' Id., 256. At trial, the defendant testified in his own defense that he had never touched

---

[3] At trial, the state was permitted to introduce A's testimony as prior misconduct evidence. She "testified that the defendant began abusing her [in or around 2011] when she was eleven years old, approximately four or five years after the sexual abuse of the victim. The first incident occurred while the defendant still was living in the family's house in Hartford. A was talking to the defendant in his bedroom when he started to tongue kiss her. The defendant removed her shirt and continued kissing her, but she was able to push him off of her. She put her shirt back on and left the bedroom. The second incident occurred approximately one week later. This time, the defendant attempted to remove A's shirt and touch her breasts at the family home. A was able to get away from him because her sister-in-law arrived at the house and interrupted him. The third incident occurred after the defendant had moved out of the family home to his own apartment. Again, the defendant started by tongue kissing her, and, then, he removed her shirt. The defendant was trying to touch her vagina and breasts, despite A's attempts to push him off of her. During this incident, the defendant attempted to get undressed while he continued touching A, until she suggested that they go to the movies in order to get out of the house." (Footnote omitted.) *State* v. *Angel M.*, supra, 180 Conn. App. 256–57; see id., 257 n.3.

State *v.* Angel M.

the victim or A in a sexually inappropriate manner. His "theory of defense was that the victim and [A] both fabricated the allegations of sexual abuse. Specifically, he claimed that they made these false allegations in retaliation for his having hit [M] during the restaurant incident, and for withdrawing all financial support from the family after moving out of the house. The jury found the defendant guilty on all counts." Id.

"At the sentencing hearing, the state did not provide a specific recommendation for a sentence. The state simply requested a 'significant sentence' for the defendant, while making clear that there was a mandatory minimum for the charged offenses. The state also noted that the defendant's 'unwillingness to participate in any sex offender treatment programs or to acknowledge any criminal behavior . . . puts him at a much higher risk' to reoffend.

"The defendant was afforded an opportunity to address the court and [to] present additional mitigating evidence. The court heard from several individuals in support of the defendant's good character. One such individual was the defendant's current romantic partner, who has a teenage daughter, with whom the defendant had been residing during the proceedings.

"Before being sentenced, the defendant engaged in the following colloquy with the court:

" '[The Defendant]: The jurors found me guilty. I am innocent of these charges presented against me, and I want to appeal this case.

" 'The Court: Well, I appreciate your position, but, in a case like this, the lifetime effects on the victims can be lessened if the person who committed these acts, particularly in a familial relationship, whether father or stepfather, takes responsibility. I know you wish to appeal, and that does create a dilemma.

State *v.* Angel M.

" '[The Court Interpreter]: Your Honor, may that be repeated for the interpreter?

" 'The Court: Well, apologizing, admitting what he did, taking responsibility will help the victims enormously; at least that has been my experience over four decades in this business. However, it puts a crimp in your ability to appeal. Do you understand that?

" '[The Defendant]: I did understand. But how would I say sorry for something that I did not do. These are just allegations? I love my daughter; I worked really hard for them. This was hard for me. And I work hard to support this family, two, three jobs to have our home and to lose everything because of these allegations. It's not fair.

" 'The Court: Well, that's your decision, sir. If you wish to continue to deny it, that's your absolute right. *The court will not punish you for that*; however, *you do not get any extra credit*. Do you have anything else you wish to say?

" '[The Defendant]: No. That's it for now.' " (Emphasis in original.) Id., 286–88.

"Thereafter, the court addressed the defendant and explained that 'sentencings have to do with [the] four following considerations: rehabilitation, deterrence, protection of society, and punishment.' The court acknowledged that the defendant had a positive presentence investigation report [(PSI) and outstanding working history] and that several people spoke on his behalf. The court considered the defendant's demeanor during the trial and his successful completion of a family violence education program." Id., 288. The court also recognized "the dilemma of the appeal[s] process" as it related to the defendant's willingness to accept responsibility for his crimes but noted that, "in this type of case, it is most helpful to the victims to have an

State *v.* Angel M.

admission or an apology.'' The court also stated that it is ''particularly important for them to be restored to [a] calm, collected, healthy mental state.''

Notably, the court expressed concern that the defendant was then living with another woman and her teenaged daughter. The court then observed that ''the defendant has violated the trust in a household'' and was ''a predator,'' and that, ''although [the defendant] was not charged with . . . crimes against his [biological] daughter [A], she did testify [as to his sexual abuse of her] under oath . . . and was quite credible.'' The court then concluded: ''These two young ladies have been devastated by your actions, sir. . . . [T]his type of offense, this type of deviancy occurs in men in all strata of society . . . . I have had many . . . of these cases. The fact that one violates the trust of a young girl, who's put her trust in you, is just about the worst crime we have short of murder.''

''After noting that it had 'taken all these things into account and . . . tried to balance the seriousness of this offense,' the court sentenced the defendant to a total effective sentence of forty-five years [of] imprisonment, execution suspended after thirty-three years, to be followed by twenty-five years of probation.''[4] *State* v. *Angel M.*, supra, 180 Conn. App. 288.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly augmented his sentence because he refused to apologize to the victims[5]

---

[4] More specifically, the trial court sentenced the defendant to twenty-five years on count one for sexual assault in the first degree, twenty years on count two for attempt to commit sexual assault in the first degree, to run concurrently with count one, and twenty years on count three for risk of injury to a child, execution suspended after eight years, followed by twenty-five years of probation, to run consecutively to count one.

[5] Although the charges against the defendant pertained only to the sexual assault perpetrated on the victim, M's daughter, we refer to the victim and A collectively as the victims.

State *v.* Angel M.

following his conviction.[6] See id., 286. The Appellate
Court rejected this contention, noting, first, that the
claim was unpreserved but nonetheless reviewable
under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d
823 (1989), as modified by *In re Yasiel R.*, 317 Conn.
773, 781, 120 A.3d 1188 (2015), because the record was
adequate for review and the claim was one of constitu-
tional magnitude. *State* v. *Angel M.*, supra, 180 Conn.
App. 288. With respect to the legal principles governing
the defendant's claim, the Appellate Court recognized
that, "[a]lthough a court may deny leniency to an
accused who . . . elects to exercise a statutory or con-
stitutional right, a court may not penalize an accused
for exercising such a right by increasing his or her
sentence solely because of that election." (Internal quo-
tation marks omitted.) Id., 289, quoting *State* v. *Elson*,
311 Conn. 726, 762, 91 A.3d 862 (2014); see also *Mitchell*
v. *United States*, 526 U.S. 314, 316–17, 119 S. Ct. 1307,
143 L. Ed. 2d 424 (1999) (sentencing court, in determin-
ing facts that bear on severity of sentence, may not,
consistent with fifth amendment privilege against self-
incrimination, draw adverse inference from defendant's
silence at sentencing). The Appellate Court further
stated, however, that a sentencing court properly may
consider a defendant's lack of remorse in fashioning
an appropriate sentence and that, under *State* v. *Huey*,
199 Conn. 121, 128, 505 A.2d 1242 (1986), a court at
sentencing also may consider a defendant's denial of
culpability in evaluating his or her prospects for rehabil-
itation. *State* v. *Angel M.*, supra, 289–90.

---

[6] In the Appellate Court, the defendant also claimed that (1) the trial court
abused its discretion in permitting the state to present uncharged misconduct
evidence concerning the defendant's sexual abuse of A, and (2) the senior
assistant state's attorney engaged in several improprieties during cross-
examination and closing argument that deprived the defendant of his consti-
tutional right to a fair trial. See *State* v. *Angel M.*, supra, 180 Conn. App.
256, 264. These claims, which the Appellate Court rejected; see id., 264, 286;
are not the subject of this appeal.

State *v.* Angel M.

Applying these principles to the present case, the Appellate Court then opined that, although the trial court placed particular emphasis on "the defendant's failure to accept responsibility and his failure to apologize to the victims"; id., 290; all of the sentencing factors considered by the court were proper. See id. As the Appellate Court also noted, the trial court "expressly stated that it would not punish the defendant for exercising his 'absolute right' to not admit guilt and [to] appeal his judgment of conviction, but it would not give him any 'extra credit.' The [trial] court's statements comport with the principle that a court may deny leniency to a defendant for exercising a constitutional right, but it may not punish him or her for exercising such a right. . . . The defendant . . . provided no reason . . . to doubt the trial court's representation that it was not going to punish [him] for exercising his 'absolute right.' " (Citation omitted.) Id., 290–91. Although the Appellate Court's determination that the trial court did not penalize the defendant for invoking his privilege against self-incrimination would have sufficed to resolve the defendant's claim in the state's favor, the court went on to say that, "[b]ecause [it] conclude[d] that [its] decision [was] controlled by [this court's] decision in *State* v. *Huey*, supra, 199 Conn. 121, [it was] not persuaded by the defendant's citation to cases from other jurisdictions for the proposition that a court may not consider a defendant's silence at sentencing as an indication of a lack of remorse."[7] *State* v. *Angel M.*, supra, 180 Conn. App. 290 n.13.

[7] In *Huey*, the defendant, Kent K. Huey, was charged with sexual assault in the first degree and burglary in the first degree after he surreptitiously entered a neighbor's apartment and sexual assaulted her at knifepoint. *State* v. *Huey*, supra, 199 Conn. 123. Following plea negotiations, Huey entered a guilty plea to sexual assault in the third degree. Id. Even though that offense does not require proof of penetration, the state informed the trial court at the time of sentencing that, if there had been a trial, the victim would have testified that Huey had penetrated her sexually. Id., 124. Huey admitted to sexually assaulting the victim but denied that penetration had occurred. Id., 125. Before imposing sentence, the court, crediting the victim's

State *v.* Angel M.

We thereafter granted the defendant's petition for certification to appeal, limited to the following two issues: (1) "Did the Appellate Court properly conclude that the trial court did not penalize the defendant for maintaining his innocence at sentencing?" And (2) "[s]hould this court overrule *State* v. *Huey*, [supra, 199 Conn. 121], because consideration of a defendant's refusal to admit guilt for any purpose at sentencing is a violation of the defendant's [constitutional] right against self-incrimination?" *State* v. *Angel M.*, supra, 328 Conn. 931.

On appeal to this court, the defendant maintains that the Appellate Court incorrectly concluded that the trial court had not punished him for invoking his right against self-incrimination and refusing to apologize to the victims. In support of this claim, the defendant contends that the Appellate Court failed to consider that the trial court imposed the maximum sentence for each offense, even though the PSI report recommended a "moderate sentence"[8] and estimated the defendant's

version of the assault, expressed the view that Huey's denial of penetration reflected adversely on his prospects for rehabilitation. Id. Thereafter, Huey appealed to the Appellate Court, claiming, inter alia, that "the sentencing judge forced him to admit guilt to a crime with which he was not charged and then punished him for the assertion of his . . . right against self-incrimination when he persisted in his denial of penetration." Id., 128. The Appellate Court rejected Huey's claim; id.; and we granted his petition for certification to appeal, limited to that issue. Id., 122. We agreed with the Appellate Court that Huey could not prevail on his claim, explaining that Huey "did not assert his . . . privilege [against self-incrimination] but rather, while represented by counsel, voluntarily responded to the court's inquiries. . . . [T]he sentencing judge did not attempt to force an admission; he merely gave [Huey] an opportunity to present his version of the incident. Having heard it, he did not have to believe it." (Citations omitted.) Id, 128–29. Thus, Huey was not "punished for persisting in his denial [that] penetration [had] occurred]. Rather, the sentencing judge, after observing him, simply factored [Huey's] denial, as an indication of his lack of readiness for rehabilitation, into that complex formula from which he labored to derive a just sentence." Id., 129.

[8] As the defendant asserts, the sentence imposed by the trial court for each of the defendant's three offenses; see footnote 4 of this opinion; was the maximum term of imprisonment allowable for the offense: sexual assault

State *v.* Angel M.

risk of reoffending as very small, and the defendant had
no prior criminal record. Moreover, before imposing
sentence, the court repeatedly referred to the defen-
dant's refusal to apologize to the victims. In the defen-
dant's view, these factors demonstrate that the trial
court did, in fact, punish the defendant for invoking his
constitutional right against self-incrimination, notwith-
standing the court's express representation to the con-
trary. The defendant further contends that, insofar as
*State* v. *Huey*, supra, 199 Conn. 121, concludes that a
court may consider an accused's silence at sentencing
as reflecting a lack of remorse or diminished prospects
for rehabilitation, we should disavow that holding as
incompatible with the accused's privilege against self-
incrimination.

We reject the defendant's claim because it is belied
by the trial court's sentencing remarks—in particular,
the court's explicit, on-the-record assurance that it
would not increase the defendant's sentence for exer-
cising his constitutional right against self-incrimina-
tion.[9] In light of this conclusion, we leave for another
day the question of whether the federal constitution

in the first degree, a class A felony, carries a maximum sentence of twenty-
five years imprisonment; see General Statutes §§ 53a-35a (4) and 53a-70 (a)
(2) and (b) (2); attempt to commit sexual assault in the first degree, a class
B felony, carries a maximum sentence of twenty years imprisonment; see
General Statutes §§ 53a-35a (6), 53a-51 and 53a-70 (a) (2) and (b) (2); and
risk of injury to a child, also a class B felony, likewise carries a maximum
sentence of twenty years imprisonment. See General Statutes §§ 53a-35a (6)
and 53-21 (a). The trial court, however, suspended execution of twelve years
of the twenty year sentence imposed for the defendant's conviction of risk
of injury to a child. See footnote 4 of this opinion. In addition, the court
ordered that the sentence for the conviction of attempt to commit sexual
assault in the first degree run concurrently with the sentence for the convic-
tion of sexual assault in the first degree. Thus, the maximum sentence
that that defendant could have received was sixty-five years; the defendant
received a total effective sentence of thirty-three years.

[9] For the reasons set forth by the Appellate Court, we agree that the
defendant's claim, although unpreserved, is reviewable under *State* v. *Gold-
ing*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, supra, 317
Conn. 781. See *State* v. *Angel M.*, supra, 180 Conn. App. 288.

State *v.* Angel M.

bars a sentencing court from considering, for any puni-
tive purpose, a defendant's denial of guilt or refusal to
accept responsibility for the crimes of which he has
been found guilty.[10] Consequently, we need not address
the second certified question.[11]

It is well settled that "a trial court possesses, within
statutorily prescribed limits, broad discretion in sen-
tencing matters. On appeal, we will disturb a trial court's
sentencing decision only if that discretion clearly has
been abused." *State* v. *Kelly*, 256 Conn. 23, 80–81, 770
A.2d 908 (2001). In exercising its discretion, the trial
court "may appropriately conduct an inquiry broad in
scope, largely unlimited either as to the kind of informa-
tion [it] may consider, or the source from which it may
come." *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S.

---

[10] Notably, the United States Supreme Court has expressly reserved the
question of whether a court may consider a defendant's invocation of the
fifth amendment right to remain silent at sentencing as reflecting adversely
on the defendant's remorse and acceptance of responsibility. See *Mitchell*
v. *United States*, supra, 526 U.S. 330.

[11] Although we do not reach that second question, we again note that the
Appellate Court, in rejecting the defendant's contention that the trial court
improperly had penalized him for not apologizing to the victims, indicated
that that claim was foreclosed by *State* v. *Huey*, supra, 199 Conn. 121; see
*State* v. *Angel M.*, supra, 180 Conn. App. 289–90 and n.13; see also footnote
7 of this opinion; which the Appellate Court characterized as holding that
a defendant's invocation of the right to remain silent at sentencing may be
considered by the court as indicative of a lack of remorse. See *State* v.
*Angel M.*, supra, 289. We granted certification on the second question to
determine whether that purported holding in *Huey* should be overruled.
See *State* v. *Angel M.*, supra, 328 Conn. 931. As we also previously explained,
however; see footnote 7 of this opinion; in *Huey*, we reasoned that the
defendant in that case had *not* invoked his privilege against self-incrimination
and, therefore, that the sentencing judge in that case did not penalize him
for doing so. See *State* v. *Huey*, supra, 128–29. We need not express any
view as to the soundness of our reasoning in *Huey*, however, in view of
our conclusion that the trial court in the present case simply did not penalize
the defendant for invoking his right against self-incrimination. Accordingly,
we do not rely on our analysis or holding in *Huey* for purposes of resolving
the present case; our decision in the present case, rather, is based solely
on the fact that the trial court imposed no penalty on the defendant—for
lack of remorse or any other reason—for his refusal to issue an apology.

State *v.* Angel M.

Ct. 589, 30 L. Ed. 2d 592 (1972). A ''defendant's demeanor, criminal history, [PSI], prospect for rehabilitation and general lack of remorse for the crimes of which he has been convicted'' are all factors that the court may consider in fashioning an appropriate sentence. (Internal quotation marks omitted.) *State* v. *Elson*, supra, 311 Conn. 782.

Notwithstanding this highly deferential standard of review, the trial court's discretion in regard to sentencing is not unfettered. E.g., *State* v. *Huey*, supra, 199 Conn. 127. As the Appellate Court explained, a court generally is not prohibited from denying leniency to a defendant who elects to exercise a statutory or constitutional right. *State* v. *Angel M.*, supra, 180 Conn. App. 289; see also *State* v. *Elson*, supra, 311 Conn. 762; *State* v. *Revelo*, 256 Conn. 494, 513, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). Principles of due process, however, forbid a court from retaliating against a defendant by increasing his sentence merely because of the exercise of such a right. E.g., *State* v. *Elson*, supra, 762; *State* v. *Revelo*, supra, 513; see also *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) (''[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort''); *Mallette* v. *Scully*, 752 F.2d 26, 30 (2d Cir. 1984) (''[T]he sentencing judge, in his discretion, may take into account as a mitigating factor the defendant's voluntary cooperation with the authorities. Nowhere have we suggested that the defendant's refusal to cooperate may be considered in increasing the sentence he would otherwise receive. It is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense.'' [Emphasis omitted; internal quotation marks omitted.]).

State *v.* Angel M.

When a defendant claims that a trial court augmented his sentence because of his decision to exercise a constitutional right, the burden is on the defendant to demonstrate the existence of that constitutional violation based on the totality of the circumstances.[12] See *State* v. *Elson*, supra, 311 Conn. 758–59. This is no easy task. As we have explained, "courts in other jurisdictions generally have required remarks by a trial judge to threaten explicitly a defendant with a lengthier sentence should the defendant opt [to exercise a statutory or constitutional right], or indicate that a defendant's sentence was based on that choice. See, e.g., *United States* v. *Cruz*, 977 F.2d 732, 733 (2d Cir. 1992) (I'm the kind of a judge where you get a fair trial . . . [but] [i]f I find that after the trial . . . you didn't have a defense at all, you're going to get the maximum, because you're playing games with me); *United States* v. *Hutchings*, [757 F.2d 11, 13 (2d Cir.)] ([The] judge stated at sentencing that [the] trial was a total waste of public funds and resources . . . [and that] there was no defense in [the] case. [The defendant] was clearly and unquestionably guilty, and there should have been no trial.) [cert. denied, 472 U.S. 1031, 105 S. Ct. 3511, 87 L. Ed. 2d 640 (1985)]; *People* v. *Mosko*, 190 Mich. App. 204, 210, 475 N.W.2d 866 (1991) (I am very concerned about this case . . . because it was a case that went to trial . . . [a]nd to get up on the stand and [be] sanctimonious and you're self-righteous and you're guilty, that seems to me to be something that is—that

---

[12] In *State* v. *Kelly*, supra, 256 Conn. 23, this court adopted the majority approach for determining whether a trial court improperly penalizes a defendant for exercising a constitutional right. Id., 82. Under this approach, the defendant must establish, in light of all of the circumstances, "that [he] received a lengthier sentence because he chose to exercise" such a right. Id., 84; see id., 82–83. As we explained in *Kelly*, a minority of jurisdictions have adopted a considerably more lenient standard pursuant to which a reviewing court is obliged to remand for resentencing merely upon a colorable showing by the defendant that the trial court exacted a penalty for the exercise of a constitutional right. Id., 82. We have not been asked in the present case to reconsider the standard we adopted in *Kelly*.

State *v.* Angel M.

is beyond [decent]) [aff'd, 441 Mich. 496, 495 N.W.2d 534 (1992)].

"[When] a trial court [has] employed more ambiguous language, however, courts generally have rejected claims that the trial court infringed on the defendant's rights. See, e.g., *United States* v. *Tracy*, [12 F.3d 1186, 1202 (2d Cir. 1993)] ([The defendant] not only minimizes his role in this operation, but negates it. In other words, he claims there was really nothing going on here and that he has been unjustly and unfairly and illegally prosecuted by the government . . . .); *State* v. *Brown*, [131 Idaho 61, 73, 951 P.2d 1288 (App. 1998)] (You want to maintain your innocence, that's fine. The evidence shows otherwise. And you have to suffer the consequence. . . . I find that you have abused the justice system and you are paying a consequence because of that.); *State* v. *Tiernan*, [645 A.2d 482, 487 (R.I. 1994)] (defendant required [the victim] to testify by exercising his right to stand trial)." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 82–83.

Consistent with the foregoing authority, in *State* v. *Elson*, supra, 311 Conn. 726, this court concluded that the defendant, Zachary Jay Elson, failed to demonstrate that he was penalized for exercising his right to a jury trial. Id., 740, 760–61. Following Elson's convictions of offenses stemming from his physical assault of a female college student; id., 730–31; the trial court conducted a sentencing hearing at which Elson addressed the court and apologized to the victim. Id., 732–33. Before imposing sentence, the court stated: "We've all heard [Elson's] apology. I don't know how sincere it is, but it is certainly unfortunate that it comes so late in the process. *If* [*Elson*] *had been truly apologetic, he wouldn't have put the victim through the trial.* To a large extent, it seems to me that [Elson's] apology represents thinking of himself rather than the victim." (Emphasis altered; internal quotation marks omitted.) Id., 733. On appeal, Elson

State *v.* Angel M.

pointed to the court's sentencing remarks as convincing
evidence that he had been punished for electing to stand
trial rather than accepting a plea bargain offered by the
state; see id., 736, 756; a contention we rejected for
three reasons. See id., 760–62. First, we observed that
the length of Elson's sentence belied his claim of vindic-
tiveness because the sentence was significantly less
than the maximum exposure he faced and appreciably
less than what the state had recommended. See id., 761;
see also id. (in determining whether record supported
Elson's claim that trial court penalized him for exercis-
ing constitutional right, "the length of the sentence that
[Elson] received must be evaluated relative to the maxi-
mum sentence faced by [Elson] and the sentence recom-
mended by the state"). Second, we reasoned that "the
vast majority of the trial court's sentencing remarks
reflected a detailed focus on legitimate sentencing con-
siderations"; (internal quotation marks omitted) id.;
including the information contained in the PSI, Elson's
demeanor, his false trial testimony, his criminal history,
his prospects for rehabilitation, the seriousness of the
offense, and the fact that he had committed his crime
while free on bail awaiting trial on other felony offenses.
See id., 735, 761–62. Finally, we deemed it "significant
that, when the trial court made the specific comments
at issue, it did so in the context of discounting the
mitigating factors, including [Elson's] allocution, state-
ments from a family friend and his father, and a letter
from his mother, rather than in its separate recitation
of factors that would justify lengthening [Elson's] sen-
tence . . . ."[13] Id., 762.

---

[13] Although we concluded that Elson failed to demonstrate that the trial
court had enhanced his sentence to punish him for exercising his right to
a trial; *State* v. *Elson*, supra, 311 Conn. 760–61; we nevertheless invoked
our supervisory authority to grant him a new sentencing hearing because
"[a]n observer hearing the comments at issue . . . could have perceived
that the trial court equated [Elson's] exercise of the right to trial with the
absence of remorse . . . thereby tainting the public's perception of the
sentencing decision . . . ." (Citation omitted; internal quotation marks
omitted.) Id., 784. There is no similar risk of public misperception in the

State *v.* Angel M.

Conversely, in *State* v. *Revelo*, supra, 256 Conn. 494, we concluded that the trial court had increased the sentence of the defendant, Hector Revelo, solely because he elected to exercise his right to challenge the constitutionality of a police search of his home that had resulted in the seizure of a substantial quantity of cocaine. Id., 496–97, 514. After Revelo was charged with certain drug and related offenses stemming from that search, he filed a motion to suppress the cocaine on the ground that the facts alleged in the search warrant on which the seizure of the cocaine was predicated did not support a finding of probable cause. Id., 497. At a pretrial hearing, the trial court announced that, although Revelo had been offered a plea bargain pursuant to which he would be permitted to plead guilty and to receive a sentence of eight years of imprisonment, he elected to have a hearing and a ruling on his motion to suppress. See id. The court further stated that, if Revelo pressed his motion and, after the hearing, it was denied, he could then enter a guilty plea and receive a sentence of nine years instead of eight years. Id., 497–98. Revelo chose the second option, and, in accordance with that election, a hearing was conducted on his motion to suppress, following which the motion was denied.[14] Id., 498. Shortly thereafter, Revelo entered a plea of nolo contendere to the charge of selling illegal drugs, and, as the court previously had promised him, he received a sentence of nine years. Id., 498–99. On appeal, Revelo maintained that the nine year sentence violated his right to due process because he received that sentence, instead of the eight year sentence that he had been offered originally, solely for exercising his

present case due to the trial court's express assurance that the defendant would not be punished for invoking his constitutional right against self-incrimination and maintaining his innocence.

[14] Revelo's motion to suppress was heard and decided by a different judge from the one who participated in the plea discussions with counsel for Revelo. See *State* v. *Revelo*, supra, 256 Conn. 498 n.6.

State *v.* Angel M.

right to a judicial resolution of his motion to suppress. Id., 499.

We agreed with Revelo, explaining in relevant part: "It has been noted that, in certain circumstances, it may be difficult to draw a meaningful distinction between 'enhancing' the punishment imposed on an accused who exercises a constitutional right and denying him the 'leniency' that he claims he would deserve if he waived that right. . . . Although the distinction between refusing to show leniency to an accused who insists on asserting a constitutional right and punishing an accused for asserting that right may, at times, be a fine one, there is no difficulty in discerning what occurred in [Revelo's] case: the trial court imposed a more severe sentence on [Revelo] solely because he asserted his right to a judicial ruling on his motion to suppress.'' (Citation omitted.) Id., 513–14.

This case presents a stark contrast to what occurred in *Revelo*. In the present case, after hearing from several character witnesses who spoke in support of the defendant, the trial court asked the defendant if he had anything to say, and he stated that, although the jurors had found him guilty, he was innocent of the charges and intended to appeal. The court responded that it "appreciate[d] [the defendant's] position'' and acknowledged that admitting guilt "does create a dilemma'' with respect to his desire to appeal. The court further explained, however, that accepting responsibility and apologizing to the victims would likely "help the victims enormously,'' to which the defendant replied that he could not express remorse for "something that [he] did not do.'' At that point, the court informed the defendant that he had an "absolute right'' to maintain his innocence and assured him that it would "not punish'' him for doing so. Although the court also informed the defendant that he would not receive any "extra credit'' for refusing to take responsibility for the offenses—in

State *v.* Angel M.

other words, he would not be granted whatever measure of leniency he otherwise would have been afforded if he had been willing to admit culpability—the court had every right to so advise the defendant. In fact, the court's candor on the issue is commendable, first, because transparency in sentencing is to be encouraged, and, second, because it gave the defendant a final chance to mitigate his sentence, if he chose to do so, by acknowledging his guilt and apologizing to the victims.

Following this colloquy, the court articulated its reasons for the sentence it was about to impose. After noting a number of mitigating factors, the court again observed that, although admitting guilt and apologizing for the offenses would pose a dilemma for the defendant because of his desire to appeal, doing so would be "most helpful" to the victims. Nothing the court stated before announcing its sentence, however, called into question its explicit assurance, made in the plainest of terms, that the defendant would not be penalized for invoking his constitutionally protected right to maintain his innocence.

In this regard, it bears mention that the record in the present case is considerably clearer than the record in *State* v. *Kelly*, supra, 256 Conn. 23, in which we rejected a claim that the trial court violated the right of the defendant, Alex Kelly, to proceed to trial rather than to plead guilty. Id., 79–80. Kelly's contention was predicated on the fact that, at the conclusion of his sentencing hearing, and prior to imposing sentence, the court stated that one of many factors it had considered in reaching a sentencing decision was "whether or not there was a plea or a complete trial," which, the court further stated, "is one of the legal factors to consider in sentencing." (Internal quotation marks omitted.) Id., 80. In disagreeing with the claim, we explained that "the totality of the circumstances surrounding [Kelly's] sentencing gives no indication that the trial court improperly augmented [his] sentence based on his deci-

State *v.* Angel M.

sion to stand trial.'' Id., 83. ''No fair reading of the record would permit the conclusion that the trial court's comment should be understood to mean that it was lengthening [Kelly's] sentence . . . on [the basis of] his choice to stand trial. Rather, we interpret the trial court's remark as a reminder to [Kelly] of the oft acknowledged truth that many factors favor relative leniency for those who acknowledge their guilt . . . and thus help conserve scarce judicial and prosecutorial resources for those cases that merit the scrutiny afforded by a trial. . . . There is a world of difference between that reminder and a clear showing that [Kelly] received a lengthier sentence because he chose to exercise his right to a jury trial.'' (Citation omitted; internal quotation marks omitted.) Id., 84. Unlike the comment at issue in *Kelly*—which, unless viewed in the broader context of the court's sentencing remarks, arguably could be construed as suggesting that the court had increased Kelly's sentence because he opted to stand trial—the remarks of the trial court in the present case contained not even the slightest ambiguity: the court in the present case stated clearly and categorically that the defendant would not be punished for invoking his right against self-incrimination. Although, in some cases, a sentencing court's comments may ''[cross] that fine line between showing leniency . . . and punishing a defendant for his silence''; (citations omitted) *United States* v. *Stratton*, 820 F.2d 562, 564 (2d Cir. 1987); a distinction that ''may be difficult to apply'' in a particular case; id.; this is not such a case.[15]

─────────────────

[15] We recognize that a number of courts, including the United States Supreme Court, have questioned the utility of this distinction, at least with respect to its applicability to the granting of leniency for cooperation with the government, while at the same time not repudiating it. See, e.g., *Roberts* v. *United States*, 445 U.S. 552, 557 n.4, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980) (''[w]e doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed [on] the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated''); *Mallette* v. *Scully*, supra, 752 F.2d 30 (characterizing distinction as ''somewhat illusory'' but acknowledging that it alone provides workable framework for

State *v.* Angel M.

The defendant relies on a few sister state cases—
most notably, *State* v. *Burgess*, 156 N.H. 746, 943 A.2d
727 (2008)—to support his claim of a constitutional
violation based merely on the trial court's advisement
that he could expect a more lenient sentence than he
otherwise would receive if he was willing to accept

sentencing purposes). In his dissenting and concurring opinion in *Mallette*,
Judge Jon O. Newman explained why, in his view, the distinction between
penalizing a defendant for refusing to cooperate and denying leniency for that
refusal is conceptually sound. He reasoned: "This [c]ircuit has recognized the
distinction between taking into account as a mitigating factor at sentencing
a defendant's cooperation with the authorities and administering additional
punishment because of a refusal to cooperate. *United States* v. *Bradford*,
645 F.2d 115 (2d Cir. 1981). I do not share the majority's view that this
distinction is 'somewhat illusory,' though I acknowledge that doubts about
the matter have been significantly expressed. *Roberts* v. *United States*,
[supra, 557 n.4]. I acknowledge the basis for such doubts, since it is obvious
that [a] defendant who refuses to cooperate often receives a greater sentence
than [a] defendant, under otherwise similar circumstances, who cooperates.
Of course, that is true of every defendant whose sentence is greater than
that of a defendant with mitigating circumstances. But the issue in such
cases is not whether one defendant's sentence is higher than another's; it
is whether he has been impermissibly punished. That would occur if the
sentencing judge started out with a tentative sentence in mind as appropriate
for the offense and the offender and then decided to adjust the tentative
sentence upward because of some impermissible factor. But the defendant
who does not cooperate has no cause for complaint if he receives the judge's
tentative sentence, even though the tentative sentence would have been
adjusted downward if he had cooperated. Viewing the issue in this way
manifestly puts a premium on what was in the judge's mind in formulating
the sentence. However, unlike the state of mind of a defendant in a criminal
case, it is not necessary that the state of mind of a sentencing judge be
ascertained beyond a reasonable doubt. It is sufficient if a reviewing court
can have reasonable confidence, giving considerable deference to the articu-
lated explanation of the sentence by the sentencing judge, that the sentence
was not adjusted upward because of an impermissible factor." *Mallette* v.
*Scully*, supra, 34 (Newman, J., dissenting in part and concurring in part).

In the present case, the trial court left no doubt that the sentence it
ultimately imposed was the "tentative" or presumptive sentence that the
court had determined to be "appropriate for the offense and the offender";
id.; that is, the sentence that the court was prepared to impose without an
acknowledgment of guilt by the defendant. Because the defendant elected
to maintain his innocence, the court had no basis to adjust that "tentative"
sentence downward as a reward for acceptance of responsibility. Id. This
case, therefore, presents a paradigmatic example of the distinction between
increasing a defendant's sentence for refusing to admit culpability and grant-
ing leniency to a defendant who does so.

State *v.* Angel M.

responsibility for the offenses. In *Burgess*, the New Hampshire Supreme Court construed its state constitution as eschewing the distinction between granting leniency to a defendant for accepting responsibility and penalizing a defendant for invoking his right against self-incrimination. See id., 760 (concluding that, under New Hampshire constitution, "denying a defendant leniency simply because he fails to speak and express remorse is equivalent to penalizing him for exercising his right to remain silent"); see also *People* v. *Wesley*, 428 Mich. 708, 713, 411 N.W.2d 159 (if defendant maintains his innocence following guilty verdict, sentence will be deemed improper if reviewing court concludes that sentencing court "attempt[ed] to get the defendant to admit guilt" and it appears "that had the defendant affirmatively admitted guilt, his sentence would not have been so severe"), cert. denied, 484 U.S. 967, 108 S. Ct. 459, 98 L. Ed 2d 399 (1987). We are not persuaded by that proposition—which is contrary to the overwhelming weight of authority—because, as we previously explained, there is a meaningful difference between increasing a sentence solely on the basis of the exercise of a constitutional right and denying leniency for invoking that right and declining to accept responsibility. See, e.g., *State* v. *Elson*, supra, 311 Conn. 760–62 (no constitutional violation when trial court stated at sentencing that guilty plea or admission of guilt would have been mitigating factor); *State* v. *Kelly*, supra, 256 Conn. 84 (recognizing critical distinction between granting leniency to defendant who acknowledges guilt, which is perfectly proper, and penalizing defendant for maintaining innocence, which is constitutionally prohibited).

Indeed, we agree with the Second Circuit Court of Appeals that the distinction is a significant one because "it is the only rule that recognizes the reality of the criminal justice system while protecting the integrity

State *v.* Angel M.

of that system.'' *Mallette* v. *Scully*, supra, 752 F.2d 30.
This is so because the rule advocated by the defendant
is unworkable: it effectively would prohibit a sentencing
court from granting leniency to a defendant who waives
his right to remain silent and accepts responsibility
because, in granting such leniency, the court necessarily
would be acknowledging the very distinction that the
defendant would have us reject. Under that rule, then,
it would appear that a court would be barred from
granting leniency to a defendant who accepts responsi-
bility merely because that same leniency would be
unavailable to a defendant who does not accept respon-
sibility. It is *that* result—one that penalizes a defendant
who accepts responsibility by denying the credit that
he otherwise would have received for doing so—that
is fundamentally unfair.

As the United States Supreme Court has repeatedly
recognized, however, ''not every burden on the exercise
of a constitutional right, and not every pressure or
encouragement to waive such a right, is invalid.'' *Corbitt*
v. *New Jersey*, 439 U.S. 212, 218, 99 S. Ct. 492, 58 L.
Ed. 2d 466 (1978). Indeed, ''[t]he criminal process, like
the rest of the legal system, is replete with situations
requiring the making of difficult judgments as to which
course to follow. Although a defendant may have a right,
even of constitutional dimensions, to follow whichever
course he chooses, the [c]onstitution does not by that
token always forbid requiring him to choose.'' (Internal
quotation marks omitted.) *McKune* v. *Lile*, 536 U.S. 24,
41, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002); see also
*United States* v. *Maria*, 186 F.3d 65, 68 n.2 (2d Cir.
1999) (''Criminal defendants are regularly forced to con-
front the choice between forgoing the exercise of legal
rights and risking stiffer penalties. . . . That they face
such choices does not, alone, offend due process.''
(Citation omitted.)). Granting leniency to defendants
who accept responsibility for their crimes ''may well

State *v.* Angel M.

affect how criminal defendants choose to exercise their constitutional rights. . . . [But] [p]ersons involved in the criminal law process are faced with a variety of choices. Some of the alternatives may lead to unpleasant consequences. For example, to choose to go to trial may result in greater punishment. To take the stand as a witness in one's case opens the door to possible perjury charges as well as possibly strengthening the prosecution's case. [The opportunity to receive credit for accepting responsibility] may add to the dilemmas facing criminal defendants, but no good reason exists to believe that [the reason for affording a defendant that opportunity is] intended to punish anyone for exercising rights. We are unprepared to equate the possibility of leniency with impermissible punishment.'' (Citation omitted; footnotes omitted.) *United States* v. *Henry*, 883 F.2d 1010, 1011 (11th Cir. 1989). We, therefore, like the vast majority of courts, ''reject [the] contention that the availability of a sentence reduction to one who clearly admits personal responsibility for the offense is the equivalent of an increase in sentence for one who does not.'' *United States* v. *Parker*, 903 F.2d 91, 105 (2d Cir.), cert. denied, 498 U.S. 872, 111 S. Ct. 196, 112 L. Ed. 2d 158 (1990), and cert. denied sub nom. *Moon* v. *United States*, 498 U.S. 874, 111 S. Ct. 201, 112 L. Ed. 2d 162 (1990).

The defendant nonetheless argues that the trial court must have penalized him for maintaining his innocence because the court made repeated references to the defendant's refusal to apologize to the victims, he received the maximum allowable sentence even though he had no prior criminal record, and the PSI placed his risk of reoffending at only 2.1 percent and included a recommendation of a ''moderate sentence.'' We disagree with the defendant's claim. First, it is true, of course, that the court was clear that it would be very beneficial to the victims—and advantageous to the

337 Conn. 655 AUGUST, 2021 681

State *v.* Angel M.

defendant—if he accepted responsibility for the offenses and issued an apology. As we previously discussed, however, the court was equally clear in acknowledging the "dilemma" that such an admission created for the defendant in light of his desire to appeal, and, most important, the court assured the defendant that he would not be penalized for maintaining his innocence. In view of this assurance, we are not persuaded that what the court said about apologizing to the victims advances the defendant's claim.

With respect to the defendant's contention concerning the severity of his sentence, his maximum exposure for the three offenses was a term of imprisonment of sixty-five years, and he received a total effective prison term of thirty-three years. See footnotes 4 and 8 of this opinion. Although the lengthy period of incarceration imposed on the defendant is no doubt on the high end of the sentencing range, it does not approach the statutory maximum sentence that he potentially could have received. Considering the very broad sentencing discretion vested in the trial court; see, e.g., *State* v. *Baldwin*, 224 Conn. 347, 370–71, 618 A.2d 513 (1993) (claim that sentence is too severe is virtually unreviewable if sentence falls within statutory limits); the prison term imposed on the defendant does not give rise to an inference that the court punished him for refusing to apologize to the victims.

Although the defendant did not have any prior convictions, the court heard sworn testimony from the defendant's daughter, A, that, on several occasions, the defendant also molested her, approximately four or five years after his sexual assault of the victim, when A was eleven years old. At the sentencing hearing, the court observed that A testified "quite credibl[y]" about that uncharged misconduct and that she, like the victim, was "devastated" by the abuse she had suffered at the hands of the defendant. In light of A's convincing testi-

State *v.* Angel M.

mony that the defendant had molested her as well as
the victim, the court was free to discount the fact that
the defendant had no prior record.

Nor do we agree with the defendant that the recom-
mendation of a "moderate sentence" in the PSI and its
estimate placing the defendant's likelihood of reof-
fending at 2.1 percent support the conclusion that the
trial court increased his sentence for maintaining his
innocence, despite the court's assurance that it would
do no such thing. Although "our law makes clear that
[PSIs] are to play a significant role in reaching a fair
sentence"; *State* v. *Thomas*, 296 Conn. 375, 389, 995
A.2d 65 (2010); the trial court's discretion in sentencing
is not constrained by any recommendation that may be
contained in the report. See *State* v. *Patterson*, 236
Conn. 561, 575, 674 A.2d 416 (1996) ("[c]ourts . . . are
afforded equally broad discretion in imposing a sen-
tence when a PSI has been provided").

Finally, it is apparent that the trial court was unper-
suaded by the PSI's assessment of the defendant as
not posing a serious recidivism risk. As we previously
noted, the state sought a " 'significant' " sentence
because of the defendant's refusal to acknowledge any
wrongdoing or to participate in sex offender treatment,
a matter of considerable concern that, the state main-
tained, put the defendant " 'at a much higher risk' " of
reoffending. *State* v. *Angel M.*, supra, 180 Conn. App.
286. The trial court, which referred to the defendant as
a "predator," evidently sided with the state. The court
also described the defendant's offense as "just about
the worst crime we have short of murder," one that
"devastate[s]" its victims and "violate[s] the laws of all
civilized societies in nature." In light of these remarks,
insofar as there is any question as to the trial court's
reason for imposing such a substantial sentence, we
believe the answer lies in the court's assessment of
the gravity of the offenses and their extraordinarily

State *v.* Angel M.

deleterious effect on the child victim,[16] and not in any desire to punish the defendant for maintaining his innocence.[17]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

ECKER, J., with whom McDONALD, J., joins, concurring. I agree with the majority that the trial court did not penalize the defendant, Angel M., for the exercise of his constitutional right to maintain his innocence but, instead, denied the defendant a sentencing benefit

---

[16] We note that, because "a criminal defendant's right to testify does not include the right to commit perjury"; *LaChance* v. *Erickson*, 522 U.S. 262, 266, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998); the trial court could have enhanced the defendant's sentence on the basis of a finding that his trial testimony was perjurious. See, e.g., *United States* v. *Dunnigan*, 507 U.S. 87, 97, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). Although it is readily apparent from the court's sentencing remarks that it credited the testimony of the victims and disbelieved the testimony of the defendant, there is nothing in those remarks to indicate that the court increased the defendant's sentence on the basis of a finding of perjury.

[17] Of course, if the defendant believes that his sentence is disproportionate to the penalties imposed in similar cases—a matter on which we express no opinion—his recourse is to file an application for review of the sentence with the Sentence Review Division of the Superior Court, which the legislature created "to [provide] a forum in which to equalize the penalties imposed on similar offenders for similar offenses." (Internal quotation marks omitted.) *State* v. *Casiano*, 282 Conn. 614, 626–27 n.16, 922 A.2d 1065 (2007); see also Practice Book § 43-28 ("[t]he review division shall review the sentence imposed and determine whether the sentence should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest, and the deterrent, rehabilitative, isolative, and denunciatory purposes for which the sentence was intended"). To the extent the defendant believes that his sentence is disproportionate to the offenses of which he was convicted, that is an issue to be taken up with the legislature. See, e.g. *State* v. *Darden*, 171 Conn. 677, 679–80, 372 A.2d 99 (1976) ("the [state] constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and [to] impose punishment within the limits and according to the methods therein provided").

State *v.* Angel M.

due to his refusal to apologize to his victims. I write separately because the conclusion that the defendant was denied a benefit to which he was not otherwise entitled does not end the constitutional inquiry. Under the "unconstitutional conditions" doctrine, it is well established "that the government may not deny a benefit to a person because he exercises a constitutional right"; (internal quotation marks omitted) *Koontz* v. *St. Johns River Water Management District*, 570 U.S. 595, 604, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013); unless the benefit is conditioned on a "germane" governmental interest that "is sufficiently related to the benefit . . . ." *National Amusements, Inc.* v. *Dedham*, 43 F.3d 731, 747 (1st Cir.), cert. denied, 515 U.S. 1103, 115 S. Ct. 2247, 132 L. Ed. 2d 255 (1995). With respect to the victim of the crimes of conviction, I believe that the condition imposed by the trial court (i.e., an apology to that victim) was both germane and sufficiently related to the legitimate penological goals of sentencing to pass constitutional scrutiny. I question, however, whether the unconstitutional conditions doctrine was satisfied as to the trial court's requirement of an apology to A, the victim of uncharged misconduct, given that the defendant was not charged with, or convicted of, any crimes in connection with A. Although the defendant does not challenge the judgment of conviction on this specific basis, and we therefore need not decide whether the doctrine of unconstitutional conditions was violated in this case, I highlight the issue so that trial judges choosing to venture onto this thin ice in the future will be sensitive to the constitutional concerns.

As the majority acknowledges, the distinction "between showing leniency [at sentencing] . . . and punishing a defendant for his silence" is a "fine line" that "may be difficult to apply in a particular case . . . ." (Internal quotation marks omitted.) Text accompanying footnote 15 of the majority opinion, quoting

State *v.* Angel M.

*United States* v. *Stratton*, 820 F.2d 562, 564 (2d Cir. 1987). Indeed, the United States Supreme Court has expressed "doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed [on a defendant] and denying him the 'leniency' he claims would be appropriate if he had cooperated." *Roberts* v. *United States*, 445 U.S. 552, 557 n.4, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980). To the extent that a principled distinction exists, it necessarily depends on the establishment of a "baseline sentence," which is "the normal sentence that would be meted out if constitutional rights were not salient." (Internal quotation marks omitted.) *United States* v. *Whitten*, 610 F.3d 168, 195 (2d Cir. 2010); see also *United States* v. *Oliveras*, 905 F.2d 623, 628 n.8 (2d Cir. 1990) ("in most situations to even make the threshold identification of whether the government is imposing a penalty or denying a benefit requires the location of some baseline from which the action at issue may be measured"). In the federal courts, the United States Sentencing Guidelines prescribe a "base offense level," which may be adjusted upward or downward depending on the defendant's participation in the crime or acceptance of responsibility. See U.S. Sentencing Guidelines Manual cc. 2–3 (2018). Thus, the federal courts typically can ascertain, by reference to the baseline sentence, whether a trial court has denied a defendant leniency or imposed a punishment as a consequence of an assertion of constitutional rights. See, e.g., *United States* v. *Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) ("[h]ere, there can be little doubt that the baseline sentence for [the defendant] was well above the 127 months ultimately imposed"), cert. denied, 510 U.S. 1065, 114 S. Ct. 741, 126 L. Ed. 2d 704 (1994); *United States* v. *Klotz*, 943 F.2d 707, 710 (7th Cir. 1991) ("Distinguishing between rewards and penalties was hard in the pre-guideline world, for sentencing was so individualistic that it was next to impossible to tell

what would have happened had the constitutional right not been pertinent. Now that the guidelines are in place, however, there is a norm: the presumptive range.''). In contrast to the federal system, there is no objectively ascertainable baseline sentence in Connecticut because we utilize a highly individualistic sentencing paradigm that confers on the sentencing judge ''very broad discretion in imposing any sentence within the statutory limits . . . .'' (Internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 126, 505 A.2d 1242 (1986). Given the breadth of sentencing discretion vested in the trial court, there simply is no baseline sentence in our state system. Thus, it typically will be ''next to impossible to tell'' what sentence would have been imposed in the absence of a defendant's assertion of his or her constitutional rights. *United States* v. *Klotz*, supra, 710. This fundamental point complicates matters in the context of a doctrine that turns on the fine and elusive distinction between benefit and penalty.

We are saved from this conceptual quagmire in the present case, however, because the record clearly reflects that the trial court was holding out a carrot rather than threatening a stick, that is, offering the defendant the benefit of sentencing leniency instead of threatening him with an enhanced sentence. The trial court explained to the defendant that ''apologizing, admitting what he did, taking responsibility will help the victims enormously, at least that has been my experience over four decades in this business. However, it puts a crimp in your ability to appeal, do you understand that?'' The defendant responded that he ''did understand'' but that he could not ''say sorry for something that [he] did not do . . . .'' The trial court replied that ''that's your decision . . . . If you wish to continue to deny it, that's your absolute right. *The court will not punish you for that; however, you do not get any extra credit.*'' (Emphasis added.) Because the defendant was

State *v.* Angel M.

denied a sentencing benefit to which he was not otherwise entitled, I agree with the majority that the trial court did not punish the defendant in violation of the due process clause of the fourteenth amendment to the United States constitution for maintaining his innocence.

I write separately because the particular facts of this case implicate another important constitutional limitation at play when a sentencing judge engages in the type of sentence bargaining that occurred here. The majority properly reaffirms the principle that a criminal defendant cannot, consistent with due process principles, be punished "merely for exercising a statutory or constitutional right." *State* v. *Revelo*, 256 Conn. 494, 513, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001). But the fact that a court's sentencing offer involves the conferral of a benefit rather than the imposition of a penalty does not give the sentencing judge carte blanche to condition that benefit on the defendant's willingness to say or do anything that the court believes will further the ends of justice. To the contrary, the doctrine of unconstitutional conditions imposes meaningful constitutional limitations on offers of sentencing leniency that are contingent on the defendant's relinquishment of his constitutional rights—even if the defendant can claim no entitlement to leniency in the first place.

Under the unconstitutional conditions doctrine, "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . . For if the government could deny a benefit to a person because of his constitutionally protected [rights], his exercise of those [rights] would in effect be penalized

State *v.* Angel M.

and inhibited.'' *Perry* v. *Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); see also *Koontz* v. *St. Johns River Water Management District*, supra, 570 U.S. 608 (''[v]irtually all of our unconstitutional conditions cases involve a gratuitous governmental benefit of some kind''). ''The key proposition of the unconstitutional condition[s] doctrine is that the government may not do indirectly what it cannot do directly. The [United States] Supreme Court has articulated this proposition in the context of holding that the government may not grant even a gratuitous benefit on condition that the beneficiary relinquish a constitutional right.'' *United States* v. *Oliveras*, supra, 905 F.2d 627–28 n.7.

Of course, not all conditions are prohibited under this doctrine. ''[I]f a condition is germane—that is, if the condition is sufficiently related to the benefit—then it may validly be imposed. In the final analysis, the legitimacy of a government proposal depends on the degree of relatedness between the condition on a benefit and the reasons why [the] government may withhold the benefit altogether.'' (Internal quotation marks omitted.) *National Amusements, Inc.* v. *Dedham*, supra, 43 F.3d 747; see also *Koontz* v. *St. Johns River Water Management District*, supra, 570 U.S. 605–606 (government is allowed ''to condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal''); *Agency for International Development* v. *Alliance for Open Society International, Inc.*, 570 U.S. 205, 217, 133 S. Ct. 2321, 186 L. Ed. 2d 398 (2013) (conditional benefits burdening constitutional rights are permissible if they ''define the federal program'' but impermissible if they ''reach outside it'').

In the present case, the trial court conditioned the ''extra credit'' sentencing benefit on the defendant's

State *v.* Angel M.

apology to the victims—plural—both the victim whom
he was convicted of sexually assaulting and the victim
whose testimony at trial was admitted as evidence of
uncharged sexual misconduct.[1] See Conn. Code Evid.
(2018) § 4-5 (b) (providing that, if certain conditions
are met, "[e]vidence of other sexual misconduct is
admissible in a criminal case to establish that the defen-
dant had a tendency or a propensity to engage in aber-
rant and compulsive sexual misconduct"). It goes
without saying that the government has a legitimate
interest in eliciting an apology to the victim of the crime
of which the defendant stands convicted. The defen-
dant's acceptance of responsibility, in the form of a
sincere apology to the crime victim, manifestly furthers
one or more of the legitimate penological goals of sen-
tencing. See *State* v. *Santiago*, 318 Conn. 1, 22, 122
A.3d 1 (2015) (penological objectives of sentencing are
"deterrence, retribution, incapacitation, and rehabilita-
tion"). As the United States Supreme Court has
observed, "[a]cceptance of responsibility is the begin-
ning of rehabilitation. And a recognition that there are
rewards for those who attempt to reform is a vital and
necessary step toward completion." *McKune* v. *Lile*,
536 U.S. 24, 47, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002).
Furthermore, "[w]hen offenders express genuine
remorse in person to those offended, the effects can
be profound. . . . Empirical studies and anecdotal evi-
dence from restorative justice programs confirm that
face-to-face expressions of remorse and apology matter
immensely to offenders and victims." (Footnote omit-
ted.) S. Bibas & R. Bierschbach, "Integrating Remorse

---

[1] The record reflects that the trial court referenced the uncharged sexual
misconduct on multiple occasions in close proximity to its request for an
apology to the "victims," at one point stating: "[The defendant is] a predator,
the stepdaughter, natural daughter; although he was not charged with the
crimes against his natural daughter, she did testify under oath, [was] subject
to cross-examination, and was quite credible. These two young ladies have
been devastated by your actions, sir."

State *v.* Angel M.

and Apology into Criminal Procedure,'' 114 Yale L.J.
85, 115–16 (2004). Providing a criminal defendant the
opportunity to admit his or her wrongdoing redounds to
the benefit of society as a whole in numerous respects;
a defendant's sincere acceptance of responsibility
repairs a tear in the social fabric created by his or her
transgression and thereby reaffirms and strengthens
the underlying moral and legal principles at stake. Fur-
thermore, the penitential act may make us safer because
a repentant and rehabilitated defendant presumably is
less likely to offend again. See, e.g., *United States* v.
*Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001) (sentencing
credit for acceptance of responsibility under federal
sentencing guidelines reflects, among other things, "the
reduced risk of recidivism of a defendant who by facing
up to the wrongfulness of his conduct takes the first
step to better behavior in the future"); S. Bibas & R.
Bierschbach, supra, 126 ("Offenders who come to terms
with their crimes and apologize start on the path to
reform. They learn valuable lessons and feel better
about themselves as persons. They may thus become
less likely to recidivate and are prime candidates for
mercy to temper criminal justice."). I agree with the
majority that the trial court did not violate the defen-
dant's constitutional rights by conditioning a sentencing
benefit on the defendant's apology to the victim for the
crimes of conviction.[2]

_____

[2] The present case involves an unusual scenario because the trial court
solicited an apology from the defendant after a trial in which the defendant
had elected to testify and proclaim his innocence. Under these circum-
stances, I suspect that many trial judges hearing an apology at such a late
stage in the proceedings would have rejected any plea for sentencing
leniency on the basis of its timing. See, e.g., *United States* v. *Fonner*, 920
F.2d 1330, 1335 (7th Cir. 1990) ("[t]he . . . judge did not abuse his discretion
in concluding that [the defendant's] last-minute apology was a deceitful
little show"). Regardless, the trial court in the present case certainly was
entitled to hold out hope that an apology to the crime victim, however
belated, would serve a beneficial and productive penological purpose.

State *v.* Angel M.

I question, however, whether a trial court constitutionally may condition a sentencing benefit on a defendant's apology to a victim of uncharged misconduct, which is criminal conduct with which the defendant has not been charged or convicted. As Judge Dupont observed in her concurring opinion in *State* v. *Huey*, 1 Conn. App. 724, 738, 476 A.2d 613 (1984), aff'd,199 Conn. 121, 505 A.2d 1242 (1986), "[t]o force the admission of guilt, at a sentencing . . . of a crime with which the defendant is not charged might jeopardize the defendant's rights in the future, either in connection with a retrial or with an independent trial claiming civil rights violations." Indeed, the Second Circuit Court of Appeals has held that it is unconstitutional "[t]o require a defendant to accept responsibility for crimes other than those to which he has [pleaded] guilty or of which he has been found guilty [because it] in effect forces defendants to choose between incriminating themselves as to conduct for which they have not been immunized or forfeiting substantial reductions in their sentences to which they would otherwise be entitled to consideration." *United States* v. *Oliveras*, supra, 905 F.2d 628; see also *United States* v. *Delacruz*, 862 F.3d 163, 177 (2d Cir. 2017) ("[a] denial of [acceptance of responsibility] credit for behavior [that the defendant] has continued to deny and has not been proved against him beyond a reasonable doubt violates the [f]ifth [a]mendment" (emphasis omitted; internal quotation marks omitted)); *United States* v. *Austin*, 17 F.3d 27, 31 (2d Cir. 1994) (defendant's refusal to accept responsibility for "any offense *other* than the offense that is the subject of the plea" cannot be used to deny defendant sentencing benefit (emphasis in original; internal quotation marks omitted)). The First and Third Circuit Courts of Appeals have expressed similar views. See *United States* v. *Frierson*, 945 F.2d 650, 655–60 (3d Cir. 1991) (holding that trial court's denial of sentencing reduction for accep-

tance of responsibility on basis of defendant's refusal to admit guilt with respect to uncharged misconduct violated defendant's constitutional rights), cert. denied, 503 U.S. 952, 112 S. Ct. 1515, 117 L. Ed. 2d 651 (1992); *United States* v. *Perez-Franco*, 873 F.2d 455, 461–64 (1st Cir. 1989) (same).

To be clear, the legal issue is not free from doubt. Although the reasoning of Judge Dupont and the Second Circuit is persuasive to me, I recognize that there is a substantial line of federal authority holding otherwise. Specifically, a majority of the federal Courts of Appeals have held that the denial of a sentencing benefit constitutionally may be conditioned on a defendant's admission of responsibility to the commission of uncharged misconduct, among other reasons, because such a condition is rationally related to the "legitimate governmental practice of encouraging, through leniency in sentencing, both cooperation with law enforcement authorities and contrition on the part of the defendant." *United States* v. *Frazier*, 971 F.2d 1076, 1084 (4th Cir. 1992), cert. denied, 506 U.S. 1071, 113 S. Ct. 1028, 122 L. Ed. 2d 173 (1993); accord *Ebbole* v. *United States*, 8 F.3d 530, 537 (7th Cir. 1993), cert. denied, 510 U.S. 1182, 114 S. Ct. 1229, 127 L. Ed. 2d 573 (1994); see also *United States* v. *Clemons*, 999 F.2d 154, 161 (6th Cir. 1993) (adopting "the rationale of [*Frazier*], a [well balanced] opinion"), cert. denied, 510 U.S. 1050, 114 S. Ct. 704, 126 L. Ed. 2d 671 (1994); *United States* v. *Mourning*, 914 F.2d 699, 707 (5th Cir. 1990) (rejecting defendant's claim that denial of sentencing benefit for refusal to admit responsibility to uncharged misconduct violated defendant's right to silence under fifth amendment because "affording a possibility of a more lenient sentence does not *compel* self-incrimination" (emphasis in original)). As the Fourth Circuit Court of Appeals held in *Frazier*, the denial of a sentencing benefit under such circumstances is not unconstitutional because "[t]he

State *v.* Angel M.

purpose of conditioning the [sentencing] reduction on full acceptance of responsibility . . . is not to discourage assertion or force waiver [of constitutional rights] or to obtain incriminating information to facilitate future prosecution, but rather, to formalize and further a legitimate governmental practice.'' *United States* v. *Frazier*, supra, 1085.

The United States Supreme Court has declined to resolve this circuit split; see *Kinder* v. *United States*, 504 U.S. 946, 112 S. Ct. 2290, 119 L. Ed. 2d 214 (1992);[3] so the issue remains unresolved. We need not decide the issue in the present case because the defendant does not claim that the trial court violated his constitutional right to maintain his innocence by conditioning a sentencing benefit on his admission of guilt and apology to a victim of uncharged misconduct. The defendant draws no constitutional distinction between either of the two victims—the one whom he has was convicted of sexually assaulting and the other whom he was not. Although the issue has not been raised or briefed by the parties, I highlight it here so that my agreement with the majority opinion is not misconstrued as an endorsement of a sentencing practice of dubious constitutionality.

For the foregoing reasons, I concur in and join the majority opinion.

--------

[3] Justice Byron White, who dissented from the court's denial of certiorari, described the circuit split and identified the importance of the legal issue. See *Kinder* v. *United States*, supra, 504 U.S. 951 (White, J., dissenting from the denial of certiorari) (although "the First, Second, and Ninth Circuits . . . have determined that conditioning the acceptance of responsibility reduction on confession of uncharged conduct denies the defendant his right against self-incrimination,'' other circuits, including Fifth Circuit, have held otherwise; "this is not a question of the mere application or simple interpretation of [the acceptance of responsibility guideline], but is instead a recurring issue of constitutional dimension, where the varying conclusions of the [c]ourts of [a]ppeals determine the length of sentence actually imposed'').